SNELL, TAYLOR & CO.

*v.*

WILLIAM H. PELLS.

*Filed at Springfield January 29, 1885.*

1. ESTOPPEL—*setting up illegality of contract—as between principal and agent.* An agent who receives money for his principal upon a contract not criminal or immoral in its character, but contrary to public policy only, will be estopped from setting up the supposed illegality of such contract in defence to an action by his principal to recover the money in his hands.

2. In this case a person, as the agent of a firm of contractors for the construction of a railroad, procured subscriptions for the purpose of securing the location of a depot at a certain point on the road, in which those who made the subscriptions were interested, the contractors having the power, under the terms of their arrangement with the railroad company, to fix the location of the depot at the place desired. The agent who thus procured the subscriptions was at the time a director in the railroad company, and, having applied the proceeds of the subscriptions to his own use, in a suit by his principals to recover from him the money so obtained, he set up the supposed illegality of the contract resulting from his official relation to the railroad company, as a defence; but it was *held,* he was estopped from relying upon such defence as against his principals.

3. PRACTICE IN THE SUPREME COURT—*passing upon instructions—absence of evidence.* It is not necessary that all the evidence in a case shall be preserved in a bill of exceptions, to enable this court to pass upon the propriety of an instruction as to the employment of the defendant as agent of the plaintiff. Such an instruction assumes that there was sufficient proof of agency.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Ford county; the Hon. N. J. PILLSBURY, Judge, presiding.

Snell, Taylor & Co. contracted with the Lafayette, Bloomington and Mississippi Railroad Company to construct its railroad from Bloomington to the State line of Indiana, at a specific price per mile. By the contract the right or power was given to them to locate the depots on the road east of the county of McLean. William H. Pells was a director in the railroad company at the making of this contract, and so continued to be until the completion of the road. He owned property at or near to Pellsville, and was anxious to have a depot located at that point on the road, which was east of the county of McLean. Other parties residing or owning property there or in the vicinity, were also desirous that a depot should be located and constructed at that place. After the making of the construction contract by the railroad company with Snell, Taylor & Co., but before it was performed, parties interested in having a depot at Pellsville were induced to subscribe an instrument in writing, whereby they respectively promised to pay to Pells the amounts, respectively, thereby indicated, for the purpose of securing the location of a depot at Pellsville. The aggregate of these subscriptions was about $3400. Depots had been located along the line of said road, and one had been established at a point about one mile from Pellsville. It is claimed by Snell, Taylor & Co. that afterwards Pells applied to them to locate and construct a depot at Pellsville, and to make the necessary buildings, switches and side-tracks, etc., and that they refused to do so

unless they were paid for so doing; that Pells then said he could and would get the money for them; that they agreed to do the work desired for a sum stated, which was some $3000 or $4000 in amount. They also claim that Pells undertook and promised to pay them if they would do the work. They also claim that afterwards, and before any work was done in this regard, they, learning of the subscription that had been made to Pells, sent an agent to certain of the parties making the subscription to Pells, and requested that they execute a promissory note to Snell, Taylor & Co., instead of the subscription to Pells; that this they refused to do, but consented to, and did, execute such a note to Pells in lieu of the subscription, and in consideration of an assignment to them of the subscription to be made by Pells; that Pells subsequently surrendered and assigned to them the subscription, and took the note payable on its face to himself, but really for them, and afterwards sold and assigned the note to another party, and appropriated the proceeds to his own use; that before the sale of the note, they, Snell, Taylor & Co., located a station at Pellsville, and caused to be constructed at that place a depot, switches, side-track, etc., and demanded of Pells the note in question, or pay for the work so done.

This is an action by Snell, Taylor & Co., against Pells, for money had and received to their use. The cause was brought to trial in the circuit court. At the close of the evidence the plaintiffs, among other things, asked the court to charge the jury, in substance,—

*First*—That if defendant, as the agent for the plaintiffs, received $3400, or about that sum, for the plaintiffs, and has never paid the same to the plaintiffs, and has refused to pay the same, upon demand made, before the commencement of this action, the plaintiffs are entitled to recover the same, unless barred by the Statute of Limitations.

*Second*—That if plaintiffs were contractors to build the railroad in question, and had, by their contract, the right to

locate the depots of said road, except in McLean county, and if, in pursuance of that contract, they had located all depots necessary for the use of the railroad and the accommodation of the public, and if, in addition to such depots, the people of and about Pellsville desired a depot for the special benefit of that community, and if plaintiffs agreed with defendant, or with defendant and others, that in consideration of a note to be executed by parties in the vicinity, for the sum of $3400, for the benefit of plaintiffs, they would put in a side-track and locate and build a depot at Pellsville, and if a note for that amount was executed to defendant in pursuance of the foregoing contract, and if plaintiffs, on notice of that fact, did locate a depot, and cause the same and a side-track to be built at Pellsville, and if, afterwards, defendant collected the note, or sold it, and received money for it, and has not paid, but has refused, after demand made, to pay the same to plaintiffs,—in that case plaintiffs are entitled to recover the same from defendant, unless barred by the Statute of Limitations.

*Third*—That if defendant, as the agent of plaintiffs, received from certain residents at and about Pellsville, a note for $3400, in payment for the construction of a switch and depot at Pellsville, and after receiving the same the defendant sold and assigned the note, and received the money therefor, and appropriated the same to his own use, in such case defendant is estopped to deny the title to the money so received.

But the court refused to give either of said instructions, and, against the objections of plaintiffs, charged the jury in substance as follows:

*First*—That if plaintiffs rely for a recovery upon a contract made either with the makers of the note or with defendant to locate a switch and station at Pellsville, when neither the public convenience nor the interests of the stockholders of the railroad company require it, but solely to get money for the job, then such contract is void, and plaintiffs can not

recover upon it if Pells was a director of said railroad company, and was employed by plaintiffs, as their agent, to raise the money upon such contract, and by subscription.

*Second*—A contract made between individuals and officers of the company to secure the location of a station upon a railway, when it was not needed either by the public or railway company, would be in the nature of a bribe; and if plaintiffs made such a contract with the makers of the note in question, they could not recover from them upon such a contract if they were defendants in this action; neither can they recover upon such a contract against defendant, Pells, if Snell, on behalf of the plaintiffs, made such a contract with him, if he was a director of the company at that time.

To these rulings plaintiffs excepted, and declining to argue the facts to the jury, suffered a verdict and judgment to go against them, under an agreement of the parties, with the approbation of the circuit court, that *the only question* to be preserved on appeal should be the one based upon the giving and refusing of said instructions, stating the rule by which the jury should be governed in determining the legality or illegality of such contract and subscription. The case comes here through the Appellate Court, by appeal of the plaintiffs below.

Messrs. WELDON & McNULTA, Mr. HAMILTON SPENCER, and Mr. CALVIN H. FREW, for the appellants.

Mr. A. SAMPLE, and Mr. CHARLES H. WOOD, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

The only question for our consideration in this case arises upon the rulings of the court upon the instructions in the case.

The bill of exceptions does not profess to give all the evidence introduced on the trial. The suggestion of counsel for appellee, that the proofs are not sufficient to require the law

as to the supposed agency of Pells to be given to the jury,
can not prevail.   The instruction given by the court for the
defendant, assumes that sufficient proof of his agency was
given to present the questions of law passed upon by the
court.   The only question brought to this court by agreement
of the parties, as stated in the bill of exceptions, with the
approbation of the circuit court, is that of the effect of the
alleged illegality of the contract and subscription.   That alle-
gation of illegality rests solely on the contention the contract
and subscription were against public policy.

The court charged the jury, that if plaintiffs rely for a
recovery upon a contract made either with the makers of the
note or with defendant to locate a switch and station at Pells-
ville, when neither the public convenience nor the interests
of the stockholders of the railroad company required it, but
solely to get money for the job, then such contract is void,
and plaintiffs can not recover upon it if Pells was a director
of said railroad company, and was employed by plaintiffs, as
their agent, to raise the money upon such contract, and by
subscription.

Whatever may be thought as to the legality of such a con-
tract or subscription, its illegality, if any, rests solely upon
the suggestion that the same is merely against public policy,
and not upon the ground that there is anything immoral or
criminal in such a contract.   In such case, an agent who has
received money for his principal can not, by law, set up such
supposed illegality as a reason why he should not pay over
the same to his principal.   The law, in such case, does not
permit the agent to make such defence.   He is estopped by
the relation of agency, and receipt of the money.   Upon this
ground the judgment of the circuit court ought to have been
reversed by the Appellate Court, and remanded for a new trial.
The writer of this opinion goes farther, and holds that the
contract, as stated in the instruction, is not vicious, as being
against public policy.   I think that when a railroad company

has established such depots as meet the wants of the public, and all such as the interests of the railroad company require to be constructed, at its own cost, and where some one or more of the men doing business near the line of the road desire, for their special convenience, the construction of an additional station, and are willing to pay a sufficient sum to make it to the interest of the company to build such station and construct its necessary switches or side-tracks, there is no impropriety in the acceptance of the proposition by the railroad company, and the construction and maintenance of such additional depot, if it will pay to maintain it after it is constructed. Such a contract would necessarily be made, if made at all, with the directors or other agents or officers of the company.

Appellee relies upon certain decisions of this court as teaching a different doctrine, but they have no application to the case presented here. In *Bestor* v. *Wathen*, 60 Ill. 138, persons owning land on the line of a railroad, contracted with certain officers of the railroad company to convey to them, individually, a certain interest in the land, for the sole consideration that the grantees would aid, assist and contribute to build up a town upon the land. It was held the contract could not be enforced. It was in the nature of a bribe to the officers of the company, to induce them to manage the affairs of the road to promote their private interest, at a sacrifice of the interests of the public and those of the stockholders. In *Marsh* v. *Fairbury, Pontiac and Northwestern Railroad Co.* 64 Ill. 414, it was held that a contract by a railroad company to locate and construct a depot at a given point in a town, and at *no other place* in that town, was not binding, for the public convenience and the interests of the stockholders might require a depot at some other point, and in such case it would be a violation of duty and trust to omit to conform to such requirement. And in *St. Louis, Jacksonville and Chicago Railroad Co.* v. *Mathers*, 71 Ill. 592, an agreement by a railroad

company not to establish another depot or station within three miles of a given station, was for the same reason held invalid.

The principle of these decisions is, that no contract by a railroad company which obstructs or restrains it in the performance of any of its duties to the public or to its own stockholders, can properly be held valid or be enforced by the courts; and no contract with any director or officer of any railroad company which creates in him a private interest, which will stand in the way of a fair and just performance of his duties to the public or to the stockholders of his company, can be sustained. Now, it may be that no interest of the general public required a depot at Pellsville. It may be that the interests of the stockholders did not require a depot to be made at that place at the expense of the company; but it is not perceived that the interests of the public or those of the stockholders could, by any possibility, be injuriously affected by the construction of a depot at that place, at the expense of appellants, or at the expense of one or more of the neighbors who had an interest in having such a depot there. Had the contract been to pay to Pells money for his own use, to induce him, as a director, to cause the railroad company to construct the depot at the expense of the corporation, it would doubtless have been a transaction in the nature of a bribe. It may be conceded that the establishment and construction of a depot at that point by appellants is, in one sense, the same as if it were located and constructed by the railroad company. In so far as they had power to locate stations under their contract, they were the agents of the railroad company; but, as already suggested, the establishment and construction of an extra depot not at the expense of the company, can not possibly harm either the interests of the public or those of the stockholders, so long as it does not restrain the construction of depots elsewhere when needed by

the public, and does not cost the railroad company anything for its construction. There is absolutely nothing in the position of Pells, as a director, or in that of appellants, as agents and contractors of the railroad company, which should forbid him to give his own money, or to induce others to give their own money, to procure, without expense to the railroad company, an extra depot for their own accommodation, or to forbid appellants to construct the same at their own cost, for an agreed compensation, to be paid them from funds other than those of the railroad company.

These are my views. But the ground on which the majority of the court place the decision of this case, and in which I concur, is, that if Pells, as the agent of plaintiffs, received the proceeds of the note in question, he can not, as against his principals, set up the supposed illegality of the arrangement as a reason why he should not pay the money which he has received for them. This the instruction given for the defendant permitted him to do.

For this error the judgment of the Appellate Court is reversed, and the cause remanded, that the judgment of the circuit court may be reversed and a new trial ordered.

*Judgment reversed.*

WALKER and SCOTT, JJ.: We do not concur either in the reasoning or conclusion in this case.

Mr. JUSTICE MULKEY was not present, and took no part in the consideration of this case.