PITTSBURG MINING COMPANY, Appellant, vs. SPOONER and others, Respondents.

*February 20 — September 3, 1889.*

CORPORATIONS. *(1) Fraud by promoters and officers: Purchase of property from themselves. (2) Who are interested in corporation. (3) Illegal issue of stock: Estoppel.*

| 74 | 307 |
|----|-----|
| 92 | 347 |
| 74 | 307 |
| 97 | 320 |
| 74 | 207 |
| d99 | 226 |
| 74 | 307 |
| 106 | 489 |
| 74 | 307 |
| 109 | 361 |
| 74 | 307 |
| 110 | ²551 |
| 74 | 307 |
| 116 | ¹351 |

1. A complaint alleged, in substance, that the defendants, having obtained a right to purchase a mining option for $20,000, proceeded to form a corporation to make such purchase, representing to the persons whom they induced to subscribe for the stock that the option would cost $90,000; that, such subscribers having paid to the corporation for or upon their stock the sum of $100,000, the defendants then, as the officers of the corporation, purchased for it the option nominally for $90,000, paying the $20,000 which it actually cost them with the money received from said subscribers, and converting the remaining $70,000 to their own use. The action was brought in the name of the corporation to recover the $70,000. *Held,* on demurrer, that the complaint stated a good cause of action.

2. It appeared by the complaint that those who had subscribed and paid for stock, and who are the present holders, agreed to take the same from one of the defendants; that afterwards, in furtherance of the fraudulent scheme, said defendant subscribed for nearly all the stock of the corporation, and it was resolved by the defendants, as the sole corporators and directors, that such stock should be issued to him, or to such persons as he might direct, in payment for the mining option, to which he had acquired the title; and that after such purchase most of the stock was issued directly to the present holders. *Held,* that the recovery of the $70,000

would not be defeated on the ground that at the time of the pur-
chase the defendants were the only persons interested in the cor-
poration.

3. The defendants cannot defeat the recovery on the ground that the
money paid to them for the option was obtained by the corpora-
tion as the proceeds of an unlawful issue of its stock; nor are
they in a position to attack the issue of the stock or the legality
of the organization of the corporation.

APPEAL from the Circuit Court for *Dane* County.

The following statement of the case was prepared by Mr.
Justice Taylor as a part of the opinion:

This action was brought by the *Pittsburg Mining Com-
pany* for the purpose of recovering $70,000 of money had
and received by the defendants for the use of the company.
The material allegations in the complaint are:

(1) That in February, 1887, the defendants conceived the
idea and agreed together to promote the organization of
the plaintiff corporation for the ostensible purpose of carry-
ing on the business of mining iron on the Gogebic range,
so called, in the state of Michigan, but for the real purpose
of cheating those who might deal with said corporation,
and by so doing enrich themselves.

(2) That in pursuance of such scheme the defendants ob-
tained for the purpose of purchase or temporary control a
mining option on said range, conferring the right to pros-
pect, explore, and mine for iron on a tract of land described
in the complaint. This option was owned by certain par-
ties named in the complaint, and the price demanded by
them for it was $20,000, and no more.

(3) That having obtained the control of such option for
the purposes of the corporation, the defendants proceeded
to obtain subscriptions to the capital stock of the proposed
corporation, to raise the money to buy it; that to induce
subscriptions to said capital stock the defendants falsely
and fraudulently represented to divers persons, and to all
persons who became and now are stockholders in said cor-

poration, that the price demanded by the owners of said option was $90,000,.and that it could not be bought for less; that the defendants were themselves desirous of buying it, but were unable pecuniarily to pay so much money, but desired to organize a corporation to purchase it; that they would themselves become stockholders in the corporation to the extent of their ability to pay for the same; that there was no speculation in the purchase price; that the defendants were making nothing out of it,— not even their expenses, unless the corporation saw fit to reimburse them,— except what all stockholders would make alike through the operation of the proposed corporation in mining the ores covered by said option.

(4) The defendants also represented that for the purpose of the successful operation of the business of mining on said tract of land it would be necessary for the corporation to raise the sum of $100,000 in money,— $90,000 for the purpose of purchasing the option from the owners thereof, and $10,000 to be put in the treasury of the company for the purpose of developing the mines.

(5) In furtherance of said fraudulent scheme the defendants drew up, and by said fraudulent representations procured to be signed, a subscription paper, of which the following is a copy: " The undersigned hereby agree with *A. H. Main*, of the city of Madison, Dane county, Wisconsin, the owner of a mining option upon, in, and to all of the north half of the southwest quarter of section number 11, town 47, range 45 east of the Michigan meridian, situate, lying, and being in the county of Ontonagon, state of Michigan, and with each other, that they will take of and from the said *A. H. Main* the number of shares of non-assessable paid-up stock in the *Pittsburg Mining Company*, proposed to be formed, set opposite their respective names, and pay for the same the sum of $2.50 per share, said payment to be made as soon as the company is duly incorpo-

rated under and by virtue of either the laws of the state of Michigan or Wisconsin, and the said _A. H. Main_ shall assign and transfer over to said corporation, and give and convey to said corporation, a perfect title to the same said option. It is understood that the capital stock of said corporation shall be $1,000,000, in 40,000 shares of $25.00 each. It is also understood and agreed that a shaft has been sunk upon the land covered by said option, to a depth of about seventy feet, and that there is in sight, at such depth below the surface of the land so covered by said option, ten thousand tons of iron ore."

(6) The complaint then alleges that this subscription paper was signed by a large number of persons, agreeing to take shares in a sufficient amount in the whole to cover the entire proposed stock of the projected corporation, to wit, $1,000,000.

(7) Immediately after said stock had been all subscribed, and on the 21st day of March, 1887, the defendants organized a corporation in conformity to the laws of this state, under the name of the "_Pittsburg Mining Company_," now the plaintiff in this action. The defendants were the only original incorporators; and on the 22d day of March, 1887, the first meeting of said corporation was held at Madison, in this state. All the defendants were present at such meeting. The defendant _Spooner_ was elected president, and the defendant _Main_ treasurer. That about the time of said meeting, and in furtherance of said fraudulent scheme, the defendant _Main_, with the advice and procurement of the other defendants, _Spooner_ and _Oakley_, but in the joint interest of all of them, subscribed for the entire stock of said corporation, viz., $1,000,000, except one share each of $25, which were taken by the defendants _Spooner_ and _Oakley;_ and thereupon at the same meeting, by the unanimous vote of the defendants as sole corporators and directors, the following resolution was adopted, viz.: "_Re-_

*solved,* that in accordance with the subscription of *A. H. Main* to the capital stock of said company, the president and secretary hereof issue to him, or to such person or persons as he may direct, and in such number of shares as he may direct, all of the said stock, except two shares thereof, one of which is held by said *Phillip L. Spooner, Jr.,* and the other by said *F. W. Oakley;* the said stock to the said *Main* to be issued as paid up in full, in consideration of his making and delivering to the president of the said corporation, for the said corporation, an assignment in writing, duly executed, of an option which he now owns on the north half of the southwest quarter of section eleven (11), township forty-seven (47), range forty-five (45) west, Ontonagon county, Michigan."

(8) It is further alleged in the complaint that none of the stock subscribed for by said *Main* was ever issued to him, except the sum of $25,000 now held by defendant *Main.* That although he conveyed to the corporation the mining option before mentioned in nominal payment for all of the stock of said corporation, neither the defendant *Main* nor any of the defendants ever had or held any valuable interest in said option above the price of .$20,000, which had to be paid to the owners thereof. That, said option having been procured and being held by the defendants, or by the defendant *Main* for them, as promoters and trustees of said corporation, whatever value or interest they possessed or could possess therein inured to and was the property of said corporation, when formed, without advance in price or other condition; and it is further alleged that $20,000 was the full value of said option.

(9) The complaint further alleges that the defendants, in furtherance of their fraudulent scheme, after said subscriptions were obtained caused said option to be conveyed to said *Main* without any consideration; then caused the cor-

poration to buy it from him for substantially its entire capital stock, caused the agreement to take shares in the projected company, as hereinbefore set forth, to read as an agreement to take them of said *Main* and pay him for them, instead of the company, and then issued the shares so subscribed for to the several persons who, by the agreement aforesaid, had agreed to take them; and collected from them the sum of $100,000, paid the owners of the option $20,000 for the same, kept $10,000 in the treasury of the company, and fraudulently converted the remaining $70,000 to their own use, in violation of their duty to the company, as its promoters, trustees, and directors; whereby the plaintiff has sustained a loss of $70,000.

(10) The complaint further alleges that in procuring control of the said mining option, in organizing the corporation, securing subscriptions to the capital stock, collecting moneys thereon, paying for said option to the owners thereof, having it conveyed to the defendant *Main* and by him to the plaintiff corporation, and in all other matters touching the organization of the plaintiff corporation and the purchase of said option, the defendants became and were the promoters, agents, and trustees of the plaintiff, and, while so acting, they could not, in law, by any pretext, pretense, or contrivance gain any personal profit or advantage over the plaintiff, or make any valid contract with it to its prejudice, and to further their individual advantage.

(11) It is further alleged in the complaint that the amount paid to the owners of said option by the defendants in behalf of the plaintiff was the sum of $20,000; that the amount obtained by the defendants from the corporation on the fraudulent pretext of said payment was $90,000, $70,000 of which the defendants have diverted from the company and fraudulently appropriated to their own use, and for this amount they are jointly indebted to the plaint-

iff as for so much money had and received to its use, and the plaintiff demands judgment for the said sum of $70,000, with interest and costs.

To this complaint the defendants demurred, and allege as grounds of demurrer: (1) That the plaintiff has not the legal capacity to sue; (2) that the complaint does not state facts sufficient to constitute a cause of action. Upon the argument of the demurrer in the circuit court, the court sustained the demurrer, and from the order sustaining the demurrer the plaintiff appealed to this court.

For the appellant there were briefs by *Tenney, Bashford & Tenney* and *John M. Olin,* and oral argument by *Mr. Olin.* They argued, among other things, that the defendants were promoters of the plaintiff corporation from the moment they began to act in its behalf in effecting its organization, and as such promoters could derive no profit from their dealings in that relation, except with the consent of all the stockholders upon a full disclosure of all the facts. They stood in a fiduciary relation to the company, and the utmost good faith was required of them. Morawetz, Priv. Corp. § 545; *Simons v. Vulcan O. & M. Co.* 61 Pa. St. 202; *Short v. Stevenson,* 63 id. 95; *Densmore Oil Co. v. Densmore,* 64 id. 43; *McElhenny's Appeal,* 61 id. 188; *St. Louis & U. S. M. Co. v. Jackson,* 5 Cent. L. J. 317; *Chandler v. Bacon,* 30 Fed. Rep. 538; *Getty v. Devlin,* 54 N. Y. 403; *Atwool v. Merryweather,* L. R. 5 Eq. 464; *Bank of London v. Tyrrell,* 5 Jur. N. S. 924; *Bagnall v. Carlton,* L. R. 6 Ch. Div. 371; *Emma S. M. Co. v. Grant,* 11 id. 918; *Whaley B. C. P. Co. v. Green,* L. R. 5 Q. B. Div. 109; *New Sombrero Phosphate Co. v. Erlanger,* L. R. 5 Ch. Div. 73; *Erlanger v. New Sombrero P. Co.* L. R. 3 App. Cas. 1218; *Phosphate Sewage Co. v. Hartmont,* L. R. 5 Ch. Div. 395; *Fawcett v. Whitehouse,* 1 Russ. & M. 132; 16 Am. Law Rev. 687; Thomp. on Liab. Off'rs Corp. 218–224.

The plaintiff's cause of action does not rest upon or grow

out of any illegal contract. Conceding that the stock of the corporation was illegally issued, the plaintiff nevertheless is a corporation having a legal existence and capable of contracting debts and of suing and being sued. Though the statute declares that stock issued for a consideration less than the par value thereof shall be void, such stock is not void for all purposes; and the holder of such stock, notwithstanding the statute, is a shareholder in a corporation existing under the laws of the state. *Parsons v. Hayes*, 14 Abb. N. C. 428. If this company had contracted debts, its creditors could compel each of the shareholders to pay into the company, for a trust fund, the difference between the amount paid on their stock and the par value thereof, notwithstanding such stock was issued as full-paid, non-assessable stock; and in such proceeding the shareholders could not successfully contend that they were not obliged to pay, on the ground of defects or irregularities in the issuing of the stock or in the organization of the company. *Upton v. Hansbrough*, 3 Biss. 417; *Payson v. Withers*, 5 id. 269; *Luflin & R. P. Co. v. Sinsheimer*, 46 Md. 315, 24 Am. Rep. 525; *Scovill v. Thayer*, 105 U. S. 143; *Upton v. Tribilcock*, 91 id. 45; Cook on Stock. Liab. sec. 42. The plaintiff is at least a corporation *de facto*, and its existence cannot be called in question collaterally. The defendants incorporated this company, and contracted with it. They are, therefore, estopped in a suit against them to deny its existence. *Chubb v. Upton*, 95 U. S. 667; *McClinch v. Sturgis*, 72 Me. 288; *Smith v. Sheeley*, 12 Wall. 358; *Whitney v. Wyman*, 101 U. S. 392; *Nat. Bank v. Matthews*, 98 id. 621; *Gartside Coal Co. v. Maxwell*, 22 Fed. Rep. 197; *Merchants' & M. Bank v. Stone*, 38 Mich. 779; *People v. La Rue*, 67 Cal. 526; *Hudson v. Green Hill S. Corp.* 113 Ill. 618. Where an illegal contract has been completely performed and the money growing out of the transaction is due to two or more persons and has been received by one of them for himself and

his associates, an action will lie for such money in behalf of the party to whom it is coming, either in whole or in part. *Faikney v. Reynous*, 4 Burr. 2070; *Petrie v. Hannay*, 3 Term R. 419; *Ex parte Bulmer*, 13 Ves. 316; *Armstrong v. Toler*, 11 Wheat. 258; *Owen v. Davis*, 1 Bailey, 316; *Lestapies v. Ingraham*, 5 Pa. St. 71, 81; *Sharp v. Taylor*, 2 Phill. Ch. 801; *McBlair v. Gibbes*, 17 How. 232; *Ingram v. Mitchell*, 30 Ga. 547; *Brooks v. Martin*, 2 Wall. 70; *Gilliam v. Brown*, 43 Miss. 641; *Woodworth v. Bennett*, 43 N. Y. 273; *Planters' Bank v. Union Bank*, 16 Wall. 483; *De Leon v. Trevino*, 49 Tex. 89; *Lewis v. Alexander*, 51 id. 578; *Heckman v. Swartz*, 50 Wis. 267; *Western U. Tel. Co. v. U. P. R. Co.* 1 McCrary, 558; *Burke v. Flood*, 6 Sawy. 220, 226–7; *Wann v. Kelly*, 2 McCrary, 629; *S. C.* 5 Fed. Rep. 584; *Pfeuffer v. Maltby*, 54 Tex. 454, 455; *Wells v. McGeoch*, 71 Wis. 196, 235–6. But defendants did not obtain this money by virtue of any illegal agreement between them and the company or the shareholders, but solely by means of their own fraud, and hence they are liable. *Kiewert v. Rindskopf*, 46 Wis. 481; *Clemens v. Clemens*, 28 id. 649; *Sprye v. Reynell*, 21 L. J. Ch. 633; *Baehr v. Wolf*, 59 Ill. 471.

The defendants were the agents of the plaintiff in receiving the money in question, and it is no defense as to them that the money paid them for their principal was the fruit of an illegal transaction. *Tenant v. Elliott*, 1 Bos. & Pul. 3; *Farmer v. Russell*, id. 296; *Thomson v. Thomson*, 7 Ves. Jr. 470; *Anderson v. Moncrief*, 3 Desaus. 124; *M'Allister v. Hoffman*, 16 Serg. & R. 147; *Berkshire v. Evans*, 4 Leigh, 223; *Bousfield v. Wilson*, 16 Mees. & W. 185; *Ingram v. Mitchell*, 30 Ga. 547; *Murray v. Vanderbilt*, 39 Barb. 140; *Daniels v. Barney*, 22 Ind. 207; *Merritt v. Millard*, 4 Keyes, 208; *Douville v. Merrick*, 25 Wis. 688; *Gilliam v. Brown*, 43 Miss. 641; *U. S. Exp. Co. v. Lucas*, 36 Ind. 361, 367; *Willson v. Owen*, 30 Mich. 474; *Kiewert v. Rindskopf*, 46 Wis.

481; *Cook v. Sherman*, 20 Fed. Rep. 167; *Tate v. Pegues*, 28 S. C. 463.

For the respondents there were briefs by *H. W. Chynoweth* and *Gregory, Bird & Gregory*, and the cause was argued orally by *H. W. Chynoweth* and *C. N. Gregory*. They contended, *inter alia*, that admitting that defendants were the agents of the appellant to sell this stock, and that all the money derived from the sale belonged to it, still it cannot recover because the contract on which it bases its right to the recovery is illegal and contrary to the positive terms of the statute. Sec. 1753, R. S.; *Clarke v. Lincoln L. Co.* 59 Wis. 655; *Lemon v. Grosskopf*, 22 id. 447; Greenhood on Public Policy, 54, 100; *Miller v. Larson*, 19 Wis. 463; *Fargo v. Ladd*, 6 id. 106; Bump on Fraud. Conv. (3d ed.), 444. The agreement to take stock in the corporation, as well as the resolution directing that the stock of the company should be issued to *Main*, was binding on all those who were parties thereto. *Flagler E. M. Co. v. Flagler*, 19 Fed. Rep. 468; *Langdon v. Fogg*, 18 id. 5; *S. C.* 14 Abb. N. C. 435; *Foster v. Seymour*, 23 Fed. Rep. 65; *Anderson's Case*, L. R. 7 Ch. Div. 75; *Re Ambrose L. T. & C. M. Co.* 14 id. 390; *Re Gold Co.* 11 id. 701; *Parsons v. Hayes*, 50 N. Y. Super. Ct. 29; *S. C.* 14 Abb. N. C. 419; Cook on Stock. Liab. secs. 27, 47; 1 Morawetz, Priv. Corp. secs. 290, 291, 625. It may well be doubted whether any fraudulent representation as to what the property cost can be ground for an action. *Southern D. Co. v. Silva*, 125 U. S. 247; *Hemmer v. Cooper*, 8 Allen, 334. See, also, *St. Louis, Ft. S. & W. R. Co. v. Tiernan*, 37 Kan. 606; *Albion S. & W. Co. v. Martin*, L. R. 1 Ch. Div. 580; *Ladywell M. Co. v. Brookes*, 35 id. 400. Courts of justice will not interfere in decreeing the distribution of proceeds derived from an unlawful contract. *Miller v. Davidson*, 8 Ill. 518; *Neustadt v. Hall*, 58 id. 172; *Craft v. McConnoughy*, 79 id. 346; *Lane v. Thomas*, 37 Tex. 157; *Read v. Smith*, 60 id. 379; *Anderson v. Powell*,

44 Iowa, 20; *Boyd v. Barclay*, 1 Ala. 34; *Robinson v. Patterson*, 39 N. W. Rep. (Mich.), 21; *Holman v. Johnson*, 1 Cowp. 343.

The following opinion was filed April 25, 1889:

TAYLOR, J. Upon the hearing of the appeal in this court, no contention was made by the learned counsel for the respondents that the demurrer was properly sustained upon the first alleged ground, viz., that "the plaintiff has not legal capacity to sue." The only question argued at length was whether the complaint stated facts sufficient to constitute a cause of action. The learned counsel for the appellant corporation contend that the complaint states facts constituting a cause of action — *first*, upon the ground of actual fraud committed by the defendants upon the company by the sale of the mining option to the company for a sum greatly in excess of its real value, brought about by false representations as to its actual cost; and, *second*, that it states a cause of action against the defendants as the promoters of the corporation, and, as such, holding a relation of trust and confidence towards it; and that, acting as the agents and officers of the corporation, they sold to the corporation, and bought for the corporation, the mining option for the sum of $70,000 more than its actual value and more than they paid for the same; that this was done without the knowledge and consent of the real stockholders of the corporation, and in fraud of their rights, and upon that ground they are liable to the corporation for the profits made by them on such sale to the corporation. The last alleged cause of action is the one upon which the learned counsel for the appellant mainly relies in this court, and is the one in favor of which the main argument of the learned counsel for the appellant is made.

Considering the defendants as the officers and promoters of the corporation at the time of the alleged purchase and

sale complained of, it seems to me very clear that — laying out of view the fact that the money of the stockholders paid for their stock to the corporation, and which money was paid to defendants for the mining option, was obtained by the issuing of full-paid shares to the stockholders upon the payment of ten per cent. of their par value, in violation of the statute — there can hardly be room for a contention that, upon the facts stated in the complaint, a cause of action is not stated against the defendants.   Under the allegations of the complaint we must treat the alleged sale of the mining option to the defendant *Main* for the entire stock of the corporation, viz., $1,000,000, as a mere subterfuge and device to cover up the real transaction, which is substantially as follows:   The defendants, having obtained a right to purchase the mining option mentioned in the complaint for $20,000, proceeded to form a corporation to make such purchase, representing to the persons who subscribed for the stock that it would cost $90,000 to make such purchase, and, having first induced other persons to subscribe for the stock upon such representations, and to pay to the corporation upon or for their stock $100,000, the corporation then, through its officers, the defendants themselves, purchased the option for $90,000, paying the $20,000 which it cost them with the money received by the corporation, and converting the $70,000 to their own use.   This is the substance of what is alleged to have been done by the company, and it appears to me to be immaterial as to the manner of doing it.   It being shown that the defendants formed the company for the purpose of purchasing this option, and having induced the present stockholders to furnish $90,000 of their money to make the purchase under the false impression created by the defendants that the defendants would be compelled to pay that amount for the purchase price, and the defendants having afterwards, as officers and agents of the company, purchased for the company such option, and

paid themselves $70,000 more than they knew they could purchase it for, and $70,000 more than they in fact paid for the same, it seems to me there can be no doubt of their liability to refund to the corporation the $70,000 so obtained. In making this statement we are not to be understood as making any charge of fraud or unfair dealing on the part of the very respectable citizens who are the defendants in this action; all that is intended is that, admitting that the allegations of the complaint in this action are true, then the result indicated follows. The truth or falsity of these statements is not now under consideration. For the purposes of this case, the defendants do not controvert them.

That the defendants were promoters of the corporation, and as such, and as the officers of the same, they assumed the position of agents and trustees of the corporation in the transaction of its business, admitting the facts as stated in the complaint to be true, there can be no doubt. This is well established by the following cases cited by the learned counsel for the appellant, viz.: *Society v. Abbott,* 2 Beav. 559; *New Sombrero Phosphate Co. v. Erlanger,* L. R. 5 Ch. Div. 73; and *Phosphate Sewage Co. v. Hartmont,* L. R. 5 Ch. Div. 394; 1 Mor. Priv. Corp. § 291; *In re British Seamless Paper Box Co.* L. R. 17 Ch. Div. 471. See, also, the case of *St. Louis, Ft. S. & W. R. Co v. Tiernan,* cited by the learned counsel for the respondents, 37 Kan. 606. Assuming that these defendants were the promoters of this corporation, and it being alleged in the complaint that two of them were the officers of the corporation when the sale and purchase were made, they must be treated as the agents and trustees of the corporation, and as such their duties and obligations towards it are clearly defined by the authorities above cited. The learned judge, in deciding the case of *St. Louis, Ft. S. & W. R. Co. v. Tiernan,* cites the rule of law governing their action, as laid down by the supreme court of Massachusetts in the cases of *Parker v. Nickerson,*

137 Mass. 487, and *Parker v. Nickerson*, 112 Mass. 195. In these cases the rule is stated as follows: "A trustee or agent cannot purchase on his own account what he sells on account of another, nor purchase on the account of another what he sells on his own account; . . . and, if he does so, the *cestui que trust* or principal, unless upon the fullest knowledge of all the facts he elects to confirm the act of the trustee or agent, may repudiate it, or he may charge the profits made by the trustee or agent with an implied trust for his benefit." See *Tyrrell v. Bank*, 10 H. L. Cas. 26; *Kimber v. Barber*, L. R. 8 Ch. 56; *Simons v. Vulcan O. & M. Co.* 61 Pa. St. 202. This rule has been sanctioned and affirmed by this court. See *Puzey v. Senier*, 9 Wis. 370; *Pickett v. School Dist.* 25 Wis. 551; *Cook v. Berlin W. M. Co.* 43 Wis. 433; *In re Taylor Orphan Asylum*, 36 Wis. 534.

Construed as I think the allegations in this case ought to be construed upon a demurrer, they present the case of trustees and agents of the corporation selling property to the corporation on the one hand, and on the other hand buying for the corporation, and making a profit for themselves by the transaction of $70,000. Under the rule of law above stated the corporation may charge such profits made by the trustees and agents with an implied trust for the benefit of the corporation, and may recover such money in an action brought by the corporation.

It is urged against this claim that at the time of the sale and purchase there were no persons interested in the corporation except the said agents and trustees themselves, and so no one was injured, as all parties then interested were fully aware of all the facts. We do not think this a true statement of the case. According to the allegations of the complaint, all the present owners of the stock were interested parties. They were in fact the corporation, and the defendants represented them in making the sale, and

not merely themselves. The relations which the defendants bore to the corporation in this case, according to the facts alleged in the complaint, are well stated by Chief Justice THOMPSON in the case of *Simons v. Vulcan O. & M. Co.* 61 Pa. St. 202. After stating that it was claimed that the organized board of directors was the company, and whatever it did could not be inquired into by the corporation put in motion by the instance of the stockholders, he says: "This is an error, and results from overlooking the fact that the directors are but the agents and trustees of the company; that they have power to act only for the interest of the company, and not against it. The shareholders constitute the company, where there is stock, and not the directors. It was therefore well put in the charge of the learned judge that the directors had no power to bind the stockholders by allowing profits to the defendants, after holding out in their prospectus that the property was obtained at original prices, and that the defendants could not claim any if they hold out that they had purchased the property for the company and were conveying at original prices. A fraud perpetrated against the corporation by any or all of the directors may assuredly be redressed by such an action in the name of the corporation. As already said, they are its agents and trustees, which implies accountability to their principals." In the case *In re British Seamless Paper Box Co.* L. R. 17 Ch. Div. 471, the Master of the Rolls says: "I quite agree to this: that, if promoters make an arrangement to get a profit for themselves out of what is apparently paid to the vendors, it is immaterial whether the contract with the vendors is approved by the directors of the company, who are the promoters, just before the allotment or just after. In both cases it is intended to cheat the future shareholders, and of course it makes no difference whatever that the persons who at the time the allotment was made were in fact the promoters, or their

nominees, knew of the fraud." It seems to me, unless we are prepared to go contrary to the cases above cited, and to very many others cited in the brief of the appellant, we must hold that an action can be maintained in the name of the corporation to redress the wrong alleged to have been done by the defendants.

What would have been the relations of the defendants to the corporation if they had in fact owned the mining option, and had formed the corporation and issued full-paid stock to themselves for such option, and transferred such stock to themselves in payment for such mining option, and then, by exaggerated or false statements as to the value of such mining option, or as to its actual cost, had induced others to purchase from them such stock, need not be determined in this action; nor whether in such case any action for such fraud could be maintained by the corporation. Under the allegations of the complaint, such was not the transaction in this case. In this case no sale to or purchase by the corporation was made until all the stock, or nearly all, had been agreed to be taken by other parties than the defendants, and, although the written agreement which they signed stated that they were to buy the stock of defendants, the allegations of the complaint show that at the time such contract was signed by the present stockholders the defendants did not have or own any of the stock of the corporation, nor did they own the mining option. The allegations also show that no stock was ever issued to the defendants except to the amount of $25,000, and the balance of the stock was issued by the corporation directly to the present holders; and the mining option was bought by the defendants and sold to the company after such stock had been subscribed and paid for by the present stockholders, with the money paid by the stockholders to the corporation. What is said by the learned author (1 Mor. Priv. Corp. § 292, p. 279) in commenting upon the

case of *New Sombrero Phosphate Co. v. Erlanger*, L. R. 5 Ch. Div. 73, is peculiarly applicable to the case at bar. In discussing the question whether the action would lie in favor of the corporation he says: "Before any shares had been issued the existence of the company was a fiction. The shareholders really formed the company, each one becoming a member when he took his shares. While the contract for the purchase of the property was nominally in force from the time of its approval by the board of directors, yet it really took effect only after the shareholders had taken their shares. It then became binding upon all the shareholders collectively, or, in other words, on the company. The fraud really consisted in inducing the shareholders to enter into this contract in their collective capacity, and in using the funds belonging to the shareholders collectively in paying the purchase price. It is evident, therefore, that the injury to the shareholders was an injury to their collective corporate interests, and that the company was the proper complainant." These remarks are strictly applicable to the transaction in this case. It is true that it is alleged that the defendants formed a corporation under the statutes of this state, and that such corporation passed a resolution to permit the defendant *Main* to subscribe for the whole capital stock, and pay for it by a transfer of the mining option to the corporation; but it appears from the complaint that before this was done an agreement had been made between the defendants and the corporation that other persons should become the owners of the stock of the corporation, and pay a certain sum of money for such stock, and thereby become the real parties constituting the corporation, and that their money should pay for the mining option; and it further appears that the transfer was not made to the corporation until after the real stockholders had become such by paying their money for the stock. The fraud in the sale was therefore a fraud

upon the collective interests of the shareholders, as it was in the *New Sombrero Phosphate Co. Case.*

Taking all the allegations of the complaint together, they charge the defendants with purchasing the mining option for the sum of $20,000 from themselves for the benefit of the corporation, the corporation at the time of the sale and purchase representing the present holders of its stock, and not simply the interest of themselves. That this complaint states a good cause of action in favor of the corporation against the defendants, we think is well settled upon principle and authority. The cases above cited of *New Sombrero Phosphate Co. v. Erlanger*, L. R. 5 Ch. Div. 73; *Phosphate Sewage Co. v. Hartmont*, L. R. 5 Ch. Div. 394; and *Simons v. Vulcan O. & M. Co.* 61 Pa. St. 202, as well as many of the other cases cited in the brief of the counsel for the appellant, very clearly sustain this action.

It is, however, urged in a very able argument by the counsel for the defendants that, admitting the corporation would have a cause of action against the defendants for the profits made by them on the sale of the mining option to the corporation, had the corporation obtained the money with which it paid the defendants for such option in a lawful way, still, as the allegations of the complaint show that it obtained such money by an illegal issue or sale of its stock to its corporators, no action will lie to recover of the defendants any part of the money so illegally obtained by the corporation. Under my construction of the allegations of the complaint, it is very clear that the fact that the corporation received the money which paid the defendants for their mining option upon an illegal issue of its stock, cannot be a defense to this action to compel them to refund to the company so much of the purchase price as was unlawfully received by them on such sale. The basis of the argument of the learned counsel is that these defendants received the money of the stockholders upon this alleged illegal

sale of the stock as the agents of the corporation, and that as such agents they cannot be made to account to their principal for the money so received by them upon such illegal sales. Admitting this to be a true statement of the facts alleged in the complaint, I think, under the decisions of this and many other courts, these agents cannot set up the illegality of the transactions as a defense to an action by the principal to recover the money of its agents. I think, however, that the allegations in the complaint show that the money received on the sale of the stock was in the possession of the corporation, and not merely in the possession of its agents, and, being so in the possession of the corporation, the defendants and agents of the corporation paid it over to themselves as the consideration for their mining option. Under the allegations of the complaint, they are not refusing to account for money collected by them as agents of the corporation in making sales of its stock, but they are refusing to account for money wrongfully obtained from the corporation upon a sale of their mining option to the company. Having changed their position in regard to this money by receiving it from the corporation as payment for the mining option sold to the company, they cannot now claim to hold it as money received by them as the agents of the corporation in making illegal sales of the stock of the corporation. The money paid to the corporation on such an illegal issue or sale of stock was, notwithstanding such illegal sale, the money of the corporation as against all the world. The purchasers of such illegally issued stock could not recover back the money paid by them to the corporation upon such illegal transaction (see *Clarke v. Lincoln Lumber Co.* 59 Wis. 655, 661, 665); and, if they cannot recover it back from the corporation, no one else can. The corporation, having the possession of the money, is for all practical purposes the owner of it; and, if these defendants took the money from the corporation in an illegal and

fraudulent way, it is no defense to such illegal act that the corporation obtained the money by a violation of the statute in selling its stock. If A. obtains the title and possession of property from B. by some fraudulent device, and C. obtains the same property of A. by fraud, and A. brings an action against C. to recover the property back, or for damages for the fraud, it would be no defense for C. that A. had fraudulently obtained it from B. This would certainly be so, unless B. made a claim for the property against C. In this case the persons whose money came to the possession of the corporation cannot enforce any claim to it as against the corporation, and consequently they could not enforce a claim to it as against the persons to whom the corporation transferred it, and, if the present stockholders were instrumental in bringing this action in the name of the corporation, as they must be held to be, by bringing it in the name of the corporation they affirm the right of the corporation to the money so received by it. By what rule of law have the defendants the right to challenge the title of the corporation to the money which was paid to them upon the sale of their mining option to the corporation? I am unable to perceive any such right, especially in a case of this kind, where no other person can claim the money.

If it should be urged that the allegations of the complaint show that there are no legal stockholders, and no legal stock issued, and so no corporation which can maintain this action, it is answered by saying that the defendants are in no position to attack either the issue of the stock or the legality of the organization of the corporation. These defendants, who were the active agents in the formation of the corporation, who were instrumental in the issue of the alleged illegal stock, and who contracted with the corporation having full knowledge of all of its transactions, are in no position to contest the regularity of the formation of the corporation. 2 Mor. Priv. Corp. §§ 750–754, and the nu-

merous cases cited in the notes; *Chubb v. Upton*, 95 U. S. 665, 667; *Cowell v. Springs Co.* 100 U. S. 55, 60; *People v. La Rue*, 67 Cal. 526. In my view of the case, these defendants, as agents and trustees of the corporation, sold their mining option to the corporation, and received from the corporation $70,000 in money of the corporation more than in law and equity they were entitled to receive therefor; and in law and equity they hold this money in trust for the corporation from which they received it. That the defendants, after having obtained from the corporation its money, which, in accordance with the principles of equity, they have no right to retain, may now refuse to refund on the allegation that the corporation was not in all respects organized in accordance with law, seems to me a proposition wholly unsupported by authority, and contrary to justice and equity. Under a proper construction of the allegations of the complaint the illegal issue of the stock by the corporation and the receipt of the money for such stock was a completed transaction before the acts upon which the corporation rely for a recovery against the defendants transpired; and so the illegal act is in no way the foundation of the action. Briefly, the foundation of the claim of the plaintiff is this: The corporation having in its possession $90,000, the defendants, as agents and trustees of the corporation, sold their mining claim to the corporation for $90,000, and, acting for the corporation, they bought it for the corporation, and paid out its money to complete the purchase; and in making such sale and purchase they so conducted themselves that they were and are not entitled, as against the corporation, to retain the profits made on the sale, but hold such profits in trust for the corporation. Under such circumstances, it appears to me wholly immaterial how the corporation became possessed of the money received by the defendants, unless they can

show that some other person or party has a better claim to such money than the corporation.

I have not discussed the question as to the right of the corporation to recover the money on the theory that they collected the same as the agents of the corporation, for the benefit of the corporation, and now hold it as such agents, because it seems to me that a fair construction of the allegations of the complaint do not show that such is the position of the defendants. If, under the allegations of the complaint, these defendants ever held this money as the agents of the corporation, they abandoned that position when they received it from the corporation as the purchase price of their mining option; and if they are entitled to hold the money at all they must hold it as vendors of such option, and as the purchase money thereof; and if they cannot, according to the rules of law and equity, hold it as such purchase money, then they must return it to the corporation. They cannot now assume to hold it as the agents of the corporation. In receiving the money as the purchase price of their option, they abandoned their position as agents of the corporation, if they ever were such as to this money, and cannot now assume such agency to defeat a recovery. *Fox v. Cash,* 11 Pa. St. 207; 2 Benj. Sales, 681.

We think the complaint states a good cause of action in favor of the plaintiff, and that the circuit court erred in sustaining the demurrer to the complaint.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.

ᐟ Lyon, J., dissents.

A motion for a rehearing was denied September 3, 1889. In their brief in opposition to the motion, counsel for the appellant cited *Bridger v. Savage,* L. R. 15 Q. B. Div. 363; *Norton v. Blinn,* 39 Ohio St. 145; *Baldwin v. Potter,* 46 Vt.

402; *Snell v. Pells*, 113 Ill. 145; *Evans v. Trenton*, 24 N. J. Law, 769; *German Congregation v. Stegner*, 21 Ohio St. 488; *Chinn v. Chinn*, 22 La. Ann. 599; *Souhegan Nat. Bank v. Wallace*, 61 N. H. 24; Mechem on Agency, sec. 526; Wood on Master & S. sec. 202; *McGrew v. City Produce Exchange*, 85 Tenn. 572; *Button v. Hoffman*, 61 Wis. 20; *Winona & St. P. R. Co. v. St. P. & S. C. R. Co.* 23 Minn. 359; *Louisville, C. & C. R. Co. v. Letson*, 2 How. 497; *Railroad Co. v. Durant*, 95 U. S. 576.

See note to this case in 42 N. W. Rep. 265.— REP.