MARGUERITE B. REDDING vs. CHARLES A. WRIGHT and another.

Argued Dec. 10, 1891.   Decided April 18, 1892.

Evidence—Materiality of.—In an action for deceit in the sale of stock in a corporation, matters of account in the books of the corporation, relating to transactions subsequent to the sale, held not material, the controversy being as to the financial condition of the corporation at the time of the sale.

Declarations of a Third Person.—The rule that the declarations of a person do not bind another, there being no relation of privity, and no conspiracy between them, applied.

Opinions—Witness When Competent to Give.—The competency of a witness to express an opinion as to the value of an established business considered.

Purchaser—When may Rely on Seller's Statements.—If a member of a corporation, offering his stock for sale, falsely and fraudulently represents that the corporation is not in debt, and is making profits of a specified amount, and thereby induces one to purchase his stock, he is responsible for the fraud, even though the purchaser might have discovered it by investigation into the affairs of the corporation.

Conspiracy Inferred from Circumstances.—A conspiracy to defraud may be inferred from the circumstances under which the parties are found to have acted, without direct evidence of conspiracy.

Appeal by defendants, William A. Godwin and Charles A. Wright, from an order of the District Court of Hennepin County, *Canty,* J., made July 13, 1891, refusing a new trial.

Frank P. Redding brought this action against the above-named defendants to recover $4,000 damages sustained by him from their false and fraudulent representations regarding the financial condition of the Minneapolis Milk Association, whereby he was induced to buy of defendant Godwin thirty shares of its stock. Redding departed this life on September 8,. 1889, and his widow, Marguerite B. Redding, was appointed administratrix of his estate, and substituted as plaintiff in the action in his stead. The issues were first tried in December, 1890, when plaintiff had a verdict for $1,900 against both defendants. That verdict was set aside, and a new trial granted. *Redding* v. *Godwin,* 44 Minn. 355.

The second trial was had February 10, 1891.. The plaintiff gave evidence tending to prove that defendant Godwin, on August 1, 1888, employed Wm. G. Wilson, a real-estate man, to find a purchaser for his stock in the corporation; told him it was A No. 1, and the business was paying over and above expenses $18 a day, and was free of debt and incumbrance. Wilson saw Redding, who was a railroad contractor, and told him what Godwin had said, and arranged a meeting between them, when Godwin said the same things in substance to Redding. Then defendant Wright came in, and Godwin introduced him to Redding, and told Wright what he had said to Redding about the corporation and its stock. Wright then said to Redding, "Yes, sir; those are the facts." Wright was then secretary and treasurer of the corporation. The two defendants met Redding August 11, 1888, at Wilson's office, in Kasota Block, Minneapolis, to complete the sale, when Redding told them he would close the deal if the corporation was in the condition they stated. Godwin said it was, and asked Wright, in Redding's presence, if it was so, when Wright said it was. Redding then bought the stock, took the certificates, and gave $1,090 cash, a horse and buggy at $200, and deeded to one Rollins, on Godwin's request, eight lots in Saunder's Park for $1,715, subject to mortgages of record.

In the mean time Wilson and Redding had been out to the plant of the Milk Association and looked it over. While there, Godwin told them that, if Redding wanted to know the condition of the corporation, the bookkeeper would show him the books then or at any time he would appoint, and would tell him anything about the business that he wanted to know, but neither Redding nor Wilson looked at the books or asked the bookkeeper anything. Redding said he was no bookkeeper and did not understand them.

On this second trial plaintiff offered in evidence the account books of the corporation to show its insolvency, and the falsity of defendant's representations. Defendants objected to receiving anything entered in them later than August 11, 1888, the day Godwin sold the stock. The court overruled the objection, and they excepted. The books were received in evidence, showing its business down to September 20, 1888. On that day the corporation made a general assignment of all its property, under Laws 1881, ch. 148, and also made a schedule of its assets and of its liabilities, and filed it, as required by 1878 G. S. ch. 41, § 24, showing its condition at the date of the assignment. This was offered in evidence, but defendants objected to its reception. The court admitted it in evidence as a list of the property without the values, saying neither the title of the paper nor its verification nor anything but the list of property will be regarded in evidence. To this ruling defendants excepted. Exhibit "D" was a statement made by the bookkeeper from the books of the corporation showing its debts and credits some time after the sale to Redding.

Defendants produced one E. R. Ide as an expert witness in the milk business, and in manufacturing, buying, and selling butter, cheese, and other dairy products. He testified that he examined the plant and business of the Minneapolis Milk Association about May 1, 1888; spent two hours in doing it. Defendants then offered to show by this witness the amount and value of the plant and business at that time, saying they would further show that the property and its condition and value remained the same down to August 11, 1888, when Redding purchased. Plaintiff objected, and the court excluded

the evidence, saying: "I don't think that a two-hours examination would enable him to tell anything about the amount or extent of the business." The defendants excepted to the ruling.

The defendants requested the court to charge the jury as follows:

6th. The plaintiff alleges that there was a conspiracy entered into between the defendants to defraud the plaintiff's intestate, by a sale to him of the stock in question. In order to establish such conspiracy it is necessary for plaintiff to establish by a preponderance of evidence some agreement or understanding, before the transfer, between the defendants, to make such sale; and, unless you do find such conspiracy, representations made by one defendant could not be considered, to establish a liability of the other defendant, and without such conspiracy the knowledge or intent of either defendant cannot be considered by the jury as affecting the liability of the other defendant.

The court refused to give this charge, and defendants excepted to the refusal. The jury returned a verdict for plaintiff against both defendants, and assessed the damages at $2,163.67. The defendants made a case containing exceptions, and it was settled, signed and filed. On it and the other files they moved June 27, 1891, for a new trial, for errors of law occurring at the trial. The motion was denied, and they appealed.

*Weed Munro,* for appellant Wright.

*Gilger & Harrison,* for appellant Godwin.

Frank P. Redding died after the commencement of this action, and the defendants were not permitted, under 1878 G. S. ch. 73, § 8, to deny the conversations with Redding testified to by Wilson and Alden, nor to state the conversation either of them had with him. Defendant Godwin denied that he had ever told Wilson that the association stock was "A No. 1," or that its business was in a flourishing condition, making $18 per day, and denied that he told Wilson anything testified to by him.

This court held, in effect, on the former appeal of this case, (44 Minn. 355,) that entries after August 11, 1888, in the records of the

corporation, were not evidence against defendants. The books were admitted without limit as to time; they were in for all purposes and for all times mentioned therein, and these particular books were taken to the jury room and examined by the jury without restraint. The books were not admissible, and their admission could not have been other than detrimental to defendants.

This court held in this case, on the former appeal, that the fact of assignment and the files therein were immaterial and inadmissible. Yet the assignment schedule was admitted in evidence, evidently for the purpose of bringing before the jury the fact of the assignment, and that the inventory was made by witness in his official capacity as assignee. When once before the jury for any purpose it was before them for all there was in the instrument, notwithstanding the limitations placed upon it by the court.

Mr. Ide was an important witness for defendants as to the value of the plant; he was the only one they could offer upon that point who was not at that time subject to suspicion of prejudice, because the other witnesses as to value were parties to a similar suit,—that of *Alden* v. *Wright*, 47 Minn. 225. He had examined the plant, and yet, with full knowledge of it and of all the testimony upon which others had based their estimates of value, he was not permitted to testify, because no sufficient foundation had been laid. *Poland* v. *Brownell*, 131 Mass. 138.

One object of defendants' sixth request to charge was to distinctly instruct the jury that the acts, statements, knowledge, or intent of one defendant would not affect the liability of the other, unless it were found that there was a conspiracy between them. It was important that the jury should so understand this well-settled principle; otherwise they might have believed that if one defendant made the representations the other would be liable, although no conspiracy were shown. *Hathaway* v. *Brown*, 18 Minn. 414, (Gil. 373;) *Hopkins* v. *Stuart*, 39 Minn. 90; *Brinkley* v. *Platt*, 40 Md. 529.

The evidence as to opportunities for investigation was not disputed. Redding was at the creamery every day, examined some of the books, talked with the employes, saw all that there was to be seen. Godwin had told him that the bookkeeper would make for him any state-

ment he desired of the assets and liabilities. Hence, supposing the alleged misrepresentations were made, Redding must be deemed to have known they were false, and therefore he could not recover. Representations of a vendor, known by the vendee to be false, cannot amount to a fraud. *Anderson* v. *Burnett,* 5 How. (Miss.) 165; 1 Story, Eq. Jur. § 202; 2 Pom. Eq. Jur. § 893; *Ely* v. *Stewart,* 2 Md. 408.

All the authorities hold that the facts must be such that the vendee may rely upon the statements made to him without imputation of negligence. *Savage* v. *Stevens,* 126 Mass. 207; Grinnell, Deceit, pp. 49, 50; *Brown* v. *Leach,* 107 Mass. 364; *Salem India Rubber Co.* v. *Adams,* 23 Pick. 256; *Rockafellow* v. *Baker,* 41 Pa. St. 319.

In general, the court should give an instruction that counsel request when it embodies a correct statement of the law bearing on the case, when it affords a presumption in a party's favor, when it is necessary to a clearer understanding of his rights or liability, and when it has not already been substantially given. *Horton* v. *Williams,* 21 Minn. 187.

*Benton, Roberts & Brown,* for respondent.

It was for the jury to say whether the circumstances were such that Redding relied rightly upon the representations made. Falsity of the representations could not have been ascertained by any examination that he made, or had an opportunity to make, either of the books or of the plant. The defendants, Wright and Godwin, were in position to know of the condition of the corporation better than any one else. That condition could not be ascertained to the degree of showing the falsity of defendants' statements without an intricate and prolonged examination of the books by an expert accountant, and without taking into consideration many things that were not shown on the books themselves. Redding had a right to rely on the representations made without making any investigation for himself, and without being bound by any investigation that he did make, if he did not thereby discover that defendants were falsifying. *Long* v. *Warren,* 68 N. Y. 426; *Busterud* v. *Farrington,* 36 Minn. 320; *Mead* v. *Bunn,* 32 N. Y. 275; *Jackson* v. *Armstrong,* 50

Mich. 65; Biglow, Fraud, pp. 30, 523; *Kiefer* v. *Rogers*, 19 Minn. 32, (Gil. 14;) *Porter* v. *Fletcher*, 25 Minn. 493; *Olson* v. *Orton*, 28 Minn. 36; *Daniels* v. *Bank of Zumbrota*, 35 Minn. 351.

The books were admissible, for they were the books from which much of the testimony of both plaintiff and defendants was given. With those that were not books of original entry were included the original entry books, from which the former had been made up.

The objections to the use of the inventory are not well founded. It was admitted conditionally and under restrictions by the court. All that was in evidence was the naked list of the property, excluding the values and everything else. This list was compared and checked from the property by the witness, and is itself an original.

The testimony of Ide offered to show the amount and extent of the business in April, 1888, four months before the sale, was certainly immaterial and incompetent. The witness had made an examination of only two hours. Nor did the offer of defendants to show that the business was carried on in the same manner make the testimony offered, admissible. The evidence offered was as to the extent and amount of the business. It might have been done in the same manner at the time of the sale as in April, but the amount of the business might have been largely diminished. Therefore the offered testimony was immaterial, and, as suggested by the Court, witness could not possibly have learned the extent and amount of the business from two hours' examination. The question of the qualification of a witness to express an opinion is one for the trial Court to determine in its discretion, and its ruling is not revisable. *Berg* v. *Spink*, 24 Minn. 138; *Wright* v. *Williams' Estate*, 47 Vt. 222.

Godwin's request No. 6 was properly refused, as it did not state correctly what was necessary to show a conspiracy. *Wolfe* v. *Pugh*, 101 Ind. 293; *Judson* v. *Cook*, 11 Barb. 642.

Wright's request No. 6 was covered by the charge.

DICKINSON, J. This is a second appeal in this action. The decision on the former appeal—44 Minn. 355, (46 N. W. Rep. 565)—embraces a sufficient statement of the nature of the action. At the second trial the plaintiff had a verdict against both defendants, and they

appealed from an order refusing a new trial. The decision of this court is asked upon eighty-five (85) assignments of error, many of which do not deserve serious consideration. But there are some assignments which are directed to substantial errors, and, while it may be that some of these did not really prejudice the case of the defendants, we are unable to say that they may not have had some influence in the minds of the jury, and, upon a consideration of the whole case, we have reluctantly concluded that the defendants are entitled to a retrial. We shall refer specially to a few matters which we think render a new trial necessary.

The account books of the corporation were received in evidence, covering a period of some weeks subsequent to the sale by Godwin of his stock. It was objected that the transactions subsequent to that time were immaterial. The objection seems to have been well founded. We are unable to say with confidence that such evidence could not have confused or misled the jury.

The same may be said of so much of Schedule D as related to the condition of the corporation subsequent to the sale.

The declarations of Wright to creditors, as to the embarrassed condition of the corporation, and as to the correctness of schedules showing its condition, were not admissible as proof against Godwin, the latter not being present. Even if there was a conspiracy to defraud the plaintiff, such declarations were not made in furtherance of it.

The court was hardly justified in ruling that the witness Ide, who showed familiarity with such matters, could not, by an examination of two hours, have acquired sufficient knowledge of the property and business to enable him to express an opinion as to its value. The weight to be given to such an opinion was rather for the jury than the court to determine.

The refusal to comply with the defendants' sixth request for instruction to the jury was erroneous, and it cannot be said that it was clearly not prejudicial. This was, in brief, that, unless the jury should find that there had been a conspiracy, the representations of one of the defendants should not be considered as evidence against the other. It is true that the request was not carefully expressed, for it did not in terms refer to representations made by one defend-

ant when the other was not present.  But that this is what was meant may be taken as conceded, for the respondent does not suggest that the instruction was erroneous, but only that it was in substance embraced in the general charge to the jury.  It does not so appear.

With reference to another trial, we will say that we think that the general charge of the court as to the conditions which would entitle the plaintiff to recover was sufficiently favorable to the defendants. It seems to be contended in their behalf that if, by pursuing further investigations, as by examining into the books of the corporation, the plaintiff could have learned that the facts were not as represented by the defendants, then he cannot recover; that he had no right to rely upon the representations of the defendants as to matters of which he could acquire knowledge from other sources, readily accessible. We do not so understand the law, and the decisions of this court do not sanction so broad a statement.  See *Faribault* v. *Sater*, 13 Minn. 223, (Gil. 210;) *Kiefer* v. *Rogers*, 19 Minn. 32, (Gil. 14;) *Burr* v. *Willson*, 22 Minn. 206; *Porter* v. *Fletcher*, 25 Minn. 493; *Olson* v. *Orton*, 28 Minn. 36, (8 N. W. Rep. 878;) *Maxfield* v. *Schwartz*, 45 Minn. 150, (47 N. W. Rep. 448.)

It will be observed that the representations to which attention is here directed were concerning matters which the plaintiff might well presume to have been within the personal knowledge of the defendants, but which the plaintiff could not learn by cursory inspection, nor without careful investigation into the affairs of the corporation, or by information from some person who had acquired knowledge by such means, and whose information might be relied on as trustworthy. The representations as to the actual profitableness of the business being carried on, and that the corporation was not embarrassed by debts, are not to be classed as mere opinions, nor as the exaggerated estimates of a vendor, concerning which the rule of *caveat emptor* is applicable.  If made for the purpose of being accepted and acted upon by the purchaser, and if so accepted and acted upon, in the belief, induced by such representations, that the facts were as stated, a recovery for the deceit will not be refused on the ground that the purchaser might by investigation have protected himself against the

fraud. If the representations were fraudulently made, with the intent to induce the plaintiff to rely upon the fact being as represented, and to act upon the belief thus induced, the wrong-doer who succeeds in such a purpose is not to be shielded from responsibility by the plea that the defrauded party would have discovered the falsity of the representations if he had pursued such means of information as were available to him. See decisions above cited.

Notwithstanding what was said when the case was here before, we think, as it seems to have been considered by the court at the trial, that from the representations alleged to have been made by the defendants, and the circumstances under which they were made, it might be possible to infer that they had agreed or combined to misrepresent the facts. This, however, seems to have been important only as affecting the admissibility of the representations made when the defendants were not in company.

Order reversed.

(Opinion published 51 N. W. Rep. 1056.)