SHAWNEE COMMERCIAL & SAVINGS BANK CO. V. FRANK S. MILLER AND CLEMENT B. EDGAR.

**1. CORPORATION DE FACTO DEFINED.**

Where there is authority in law for the incorporation of a company, and there is an attempt, in good faith, on the part of the incorporators to incorporate under such law, and articles of incorporation have been issued, duly certified and recorded by the secretary of state, and the incorporators have held meetings, elected directors, and performed other acts thereunder, as a corporation, notwithstanding there may be defects and irregularities in the articles of incorporation, it is a corporation *de facto*, and only the state can inquire in a direct proceeding, whether it be a corporation *de jure*.

**2. SECTION 3797 REV. STAT. IS DIRECTORY—SECTION 9 OF ACT OF APRIL 25, 1898 (93 O. L. 401), DOES NOT APPLY.**

Section 3797 Rev. Stat. is directory; and its violation would not be criminal and render the company and its agents subject to the penalties prescribed by Sec. 9 of an act passed April 25, 1898 (93 O. L. 401), which act has no application to companies authorized to be incorporated under said section.

**3. ATTACHMENT—AFFIDAVIT IN—MADE BY AGENT, SUFFICIENCY OF.**

In an affidavit for an order of attachment, under Sec. 5522 Rev. Stat. wherein the affiant makes oath "that he is a director and agent of the plaintiff, a corporation duly incorporated under the laws of Ohio," it is not necessary to show that the affiant, as such director and agent of plaintiff, was authorized to make the affidavit. Section 5019 Rev. Stat. was intended to apply only to an affidavit in verifying a pleading made by an agent or attorney.

**4. SAME—UNDER SUBD. 9 OF SEC. 5521 REV. STAT.**

An affidavit for an order of attachment made by a corporation as plaintiff, wherein the plaintiff's claim is for "damages for the false and fraudulent representations and fraudulent acts, arts and practices of the defendants, wherein and whereby the plaintiff was induced to purchase from the defendants certain bank fixtures and furniture and other property of the defendants, for the sum of $5,837.74, that being the value thereof as falsely and fraudulently on the twenty-second day of April, 1902, by the defendants represented to the plaintiff's board of directors, who acted for it in the transaction; whereas in truth and in fact all said property was of the value of $1,000, and no more, as the defendants then well knew, and as the plaintiff and said directors did not then know, they relying on the defendants' said representations, and said defendants at the time also falsely and fraudulently pretending to be stockholders in and directors of the plaintiff, when they

were not in fact either, although they voted as such directors at their meeting for said purchase, and said directors did not then know that they were not such directors or stockholders. " is sufficient to charge actual fraud on the part of the defendants, and the fraudulent contracting the debt and fraudulent incurring the obligation by them, for which suit may be brought, under Subd. 9 of Sec. 5521 Rev. Stat.

**5. PROMOTER DEFINED—HIS DUTIES AND OBLIGATIONS.**

A promoter is one who participates in bringing about the organization of an incorporated company and in getting it into condition to transact its business, and as such occupies a fiduciary relation thereto. He is bound to fully disclose his relations to the property which is the subject of the enterprise; and persons induced to become stockholders therein have the right to rely on the good faith and fair dealing of its promoters, and to assume that the latter have not secretly perverted the organization to the accomplishment of selfish purposes, personal gain, and the destruction of that equality of right which all stockholders are entitled to enjoy in the absence of some known modification.

**6. PROMOTER'S DUTIES IN DEALING WITH CORPORATIONS.**

A promoter of a corporation is chargeable with the duties of the trust relation for the benefit of stockholders from the time he begins to organize the company; and he is bound to act openly and fairly and in such a way that those having independent charge of the company, as well as those who are induced to become subscribers to its stock, may be fully advised of the relation he bears to the property which he proposes to sell and the true value thereof in like manner as one who assumes to act as the agent of another in the purchase of property. Any suppression, concealment or misrepresentation of material facts connected therewith made by the promoter thereof is a fraud upon the corporation.

**7. SAME—LIABILITY OF PROMOTER FOR FRAUD.**

Where it appears that the defendants procured for plaintiff company, the articles of incorporation, secured stock subscriptions, named the board of directors, selected the finance committee, had themselves chosen as members of the board of directors and acted and voted as such directors, representing and claiming to be the owners of a majority of the shares of the capital stock of said company, whereas in fact neither of defendants owned any of the stock of said company; that while so acting as directors they sold furniture and fixtures belonging to them to the company, they acting and voting as directors and urged the purchase of the property by the board for the company, representing to the other directors that said furniture and fixtures were cheap at the price sold, whereas they were not worth to exceed one third thereof; that said defendants represented that they, as stockholders in said company, were paying sixty per cent. of the purchase price of said furniture and fixtures; that the value of the furniture and fixtures was unknown to the other members of the board of directors; that they were men without experience as to values of property of that kind, and relied upon the representations of the defendants as to their ownership of stock as represented, and as to the value of the property sold. *Held:*

(1) The defendants were the promoters of said company.

(2) The acts committed by them constitute actual fraud, and the fraudulent contracting of a debt and fraudulent incurring an obligation, for which an attachment will lie in a suit for damages by the company.

(3) That they are liable to the corporation, its stockholders and creditors, as trustees, for the profit thus fraudulently obtained.

**8. SAME.**

Where a corporation, through its directors, purchases property, it is entitled to the benefit of the independent judgment of its directors, in regard to the value and price to be paid therefor ; and a statement as to the value of property made to the other directors by an acting director of the corporation, who was also the owner of such property and a promoter of such corporation, is

not a mere opinion, but is a statement of fact, and if false, furnishes ground for attachment in an action by the corporation against such director for fraud; and it is immaterial that the other director of the corporation knew or could have ascertained by reasonable diligence the falsity of such statements as to the value of the property purchased.

**9. SAME—EFFECT OF SUSTAINING ATTACHMENT.**
Where the same alleged fraud is relied upon as ground of recovery in the petition as is set forth in the affidavit for attachment, the finding of a court or judge thereof on motion to discharge, that there is sufficient proof to sustain the attichment, in no way affects the issue made by the pleadings. That issue is still for the court or jury on the trial and must be determined on the evidence then produced.

HEARD ON ERROR.

George E. Martin, M. A. Daugherty, for plaintiff in error.

John Ferguson, H. D. Cochran, T. J. McDermott, for defendants in error, cited:

The making and filing, for the purpose of profit, of articles of incorporation in the office of the secretary of state, do not make an incorporated company; such articles are simply authority to do so. No company exists within the meaning of the statute, until the requisite stock has been subscribed and paid in, and the directors chosen. State v. Insurance Co., 49 Ohio St. 440 [31 N. E. Rep. 658; 16 L. R. A. 611; 34 Am. St. Rep. 573].

The court will take judicial notice of the population of a village according to the federal census. 1 Jones Evidence, Secs. 127, 133; Abbott Trial Brief 533.

A corporation, in its organization, must comply with the statutory requirements. Secs. 3821-6 and 3821-7 Rev. Stat.; Huber v. German Congregation, 16 Ohio St. 372; Medill v. Collier, 16 Ohio St. 599; Trust Co. v. Floyd, 47 Ohio St. 525 [23 N. E. Rep. 110; 12 L. R. A. 346; 21 Am. St. Rep. 846].

Plaintiff in error was prohibited by Sec. 3797 from doing business. By the other sections above quoted, it was made criminal, and a penalty attached. In this connection we desire to call your attention to the case of Bloom v. Richards, 2 Ohio St. 387.

This pretended bank was not organized and was not authorized to do a banking business. Its acts, in that respect, were illegal and criminal. Its purchase of this property to use in its illegal and criminal purpose gives it no right or claim, if the sale to it was fraudulent and wrongful to recover. This proposition is well settled in the case of Spurgeon v. McElwain, 6 Ohio 442 [27 Am. Dec. 266]; Goudy v. Gebhart, 1 Ohio St. 262.

Something more must be shown than the mere fact that a contract was made by a corporation with an individual who was at the time a director of the corporation, and who participated as such in the making

of the contract, in order to render the contract invalid. United States Roll. Stock Co. v. Railway Co., 34 Ohio St. 450 [32 Am. Rep. 380; Browne v. Board & Paper Co., 11 Circ. Dec. 102 (20 R. 351).

The parties were dealing at arm's length. One was trying to get as much, the others give as little, as he could. The purchaser had no right to rely upon the assertions made; there was no relationship between the parties such as justified the reposing of confidence by one in the other. Smith v. Patterson, 33 Ohio St. 70; Kerr Fraud 83, 84, 87; 1 Benjamin Sales, 560, 561, 562, notes.

## VOORHEES, J.

On July 21, 1902, plaintiff brought its action in common pleas court of Perry county against defendants, and alleged in its petition in substance: That it is a corporation duly incorporated under the laws of Ohio, with power to receive deposits, borrow and lend money on interest, etc.; and that its principal place of business is at the village of Shawnee, in said county.

That the corporation was organized March 22, 1902, and the defendants were the promoters thereof, and induced and procured the formation of said company; that the defendants were at the time conducting a private banking business in said village, under the assumed name of The Shawnee Commercial & Savings Bank, and as such promoters, they procured and induced the incorporators of plaintiff, to file the certificate of incorporation and procured and induced various persons to take, or subscribe for stock to be issued by plaintiff corporation. This they did by representing to said parties that the incorporation could do a prosperous banking business in said village, and by further representing that they would each subscribe and pay for thirty shares of the capital stock of the company, and the capital stock of said company was by the defendant fixed at $25,000, divided into 250 shares of $100 each, and it was so stated in the articles of incorporation.

That afterwards, and on or about April 18, 1902, the certain stockholders who had subscribed for stock in said company, met to organize the same by electing directors, and said defendants were present at said meeting and falsely and fraudulently represented to said stockholders that they had subscribed for and held thirty shares of said stock each, and said defendants voted said alleged shares of stock so falsely pretended to be owned and held by them, and were themselves elected as directors of said corporation at said election; whereas, at said time, as the defendants well knew, they had not subscribed for any shares of plaintiff's stock, nor did either of said persons own or hold any share of said stock in said corporation; and all of defendants' said representations and acts were

false and fraudulent, and made with the intent and purpose of furthering and effecting a scheme to cheat and defraud the plaintiff out of its moneys.

That afterwards on April 22, 1902, at a meeting of the directors of the corporation, said defendants being present and acting as directors, induced and procured said board of directors, acting for and on behalf of the plaintiff, to buy out defendants' said private bank, by purchasing, receiving and accepting all its assets at the valuation fixed by them, and by assuming to pay the obligations of said bank in an amount equal to the said valuation of said assets.

That at the time said assets were purchased and accepted by plaintiff, they consisted in part of certain bank furniture and fixtures, which were then of the value of $1,000 and no more, as defendants then well knew, and a further item of said assets was an expense account, of $721.32, which represented no value, but only money already paid out for prior expenses of defendants' said bank.

That at said directors' meeting, defendants falsely professed and pretended to be the owners of stock, and diretocrs of said company, and argued and voted as directors for said purchase, and then and there falsely and fraudulently represented to the directors, that they owned sixty shares of stock in the corporation, being a majority of all the stock issued by the company, which said false and fraudulent representations the said directors then acting for and on behalf of plaintiff believed to be true, they then relying upon the said representations of said defendant, and then having no other knowledge as to the ownership of said sixty shares of stock, than was then imparted to them by defendant; said defendants with the intent and purpose aforesaid, and to induce plaintiff and said board of directors acting for and on behalf of plaintiff in said transaction, to purchase the said assets and property of their said bank, falsely and fraudulently represented to said directors that said bank furniture and fixtures were of the value of $5,116.40, and that the said expense account of $721.37 was also a true and valuable asset of said bank, and should be purchased and paid for by said corporation at said fixed prices and values so represented by them as aforesaid; and plaintiff and its said board of directors acting for plaintiff, and relying upon and believing said representations to be true, and having no knowledge to the contrary, were by said false and fraudulent representations, acts, arts and practices of defendants, induced to purchase, and pay to defendants out of the corporate moneys and assets of plaintiff, the sum of $5,837.74, for said bank furniture and fixtures and expense account aforesaid; while in truth and in fact defendants were not then the owners of any stock in said company, were not entitled to act as directors therein, were not entitled to vote as such directors, and said furniture

and fixtures and expense account were then of the value of $1,000 and no more, as defendants and each of them well knew; and defendants and each of them well knew that all of said representations and acts were false and fraudulent, and were part of their scheme to defraud the plaintiff. By means whereof defendants unlawfully and wrongfully and fraudulently did procure from plaintiff the sum of $5,837.74, to its damage in the sum of $5,000.

At the time of filing said petition plaintiff filed its affidavit for attachment. The affidavit is as follows:

"State of Ohio, County of Perry, ss.

"Edward G. Blaire being first duly sworn says: He is a director and agent of the plaintiff, The Shawnee Commercial & Savings Bank Company, a corporation duly incorporated under the laws of Ohio, and further:

"I. That the nature of the claim of the said plaintiff against said defendants and for which the plaintiff brings its said action in said court against said defendants for damages for the false and fraudulent representations and fraudulent acts, arts and practices of the defendants, wherein and whereby the plaintiff was induced to purchase from the defendants certain bank fixtures and furniture and other property of the defendants for the sum of $5,837.74, that being the value thereof as falsely and fraudulently on the twenty-second day of April, 1902, by the defendants represented to the plaintiff's board of directors, who acted for it in the transaction; whereas in truth and in fact all said property was of the value of $1,000 and no more, as the defendants then well knew, and as the plaintiff and said directors did not then know, they relying on the defendants' said representations, and said defendants at the time also falsely and fraudulently pretending to be stockholders in and directors of the plaintiff, when they were not in fact either, although they voted as such directors at their meeting for said purchase and said directors did not then know that he was not such director or stockholder."

On July 26, 1902, the defendant, Frank S. Miller, filed his motion to discharge the attachment, and on the same day filed his affidavit and separate answer to the plaintiff's petition.

The motion to discharge the attachment assigns three grounds, which are hereinafter set forth.

The separate answer of defendant, Miller, takes issue with the petition as to the plaintiff being a corporation, alleging that it is not authorized to act as a corporation, or to commence or maintain this suit, and that it has ever since April 22, 1902, illegally and criminally been doing the matters and things set forth in said answer.

The purpose and scope of the answer is to show by allegations of facts that the plaintiff is not a legally organized corporation under the laws of Ohio.

The answer denies that he, Miller, was at the time of the pretended organization and incorporation of plaintiff, engaged in the private banking business, or that he represented to said parties or any of them that he would subscribe for and pay for thirty shares of stock, or that he had anything to do with fixing the capital stock of said corporation at $25,000, or that he made any representations as to being a stockholder, or director therein; that all of said matters were of record in the books of said pretended corporation, and said parties had access thereto. The answer puts in issue the allegations of the petition wherein it charges him with fraud or false representations.

The cause was submitted to the judge of the court of common pleas of said county, at chambers, upon the motion to discharge the attachment and evidence.

Upon the issues thus made and joined and the evidence the judge discharged the attachment.

A bill of exceptions, containing the evidence offered by the plaintiff and defendants, was taken and is brought into this court by petition in error.

His honor, the judge, on hearing said motion, found that the first and second grounds stated in the motion, were not well taken, and said motion as to said grounds was overruled; and sustained the third ground of the motion, and discharged the attachment for the reason set forth therein.

The defendant, Miller, excepted to the judge's holding in overruling his motion as to the first and second grounds, and the plaintiff excepted to the ruling on the third grounds.

Both plaintiff and defendant, Miller, prosecute error to this court, by petition and cross-petition in error.

This requires the examination of the whole record, and all the grounds assigned in defendants' motion to discharge the attachment of plaintiff in error.

The grounds of the motion are:

First. Because said alleged plaintiff is not and was not at the time of the commencement of this action a corporation, and has not and had not at the commencement of this action, legal capacity to commence or prosecute the same.

Second. That the facts stated in said affidavit are not sufficient to authorize or justify the issuance of said attachment.

Savings Bank Co. v. Miller.

Third. That the facts stated in said affidavit as grounds for issuing said attachment are not true.

In support of defendants' motion, Miller filed an affidavit in which he denies the truth of the facts and allegations contained in plaintiff's affidavit upon which the order of attachment was issued; and he also files his separate answer denying the material allegations of the petition as to plaintiff's corporate capacity, its right to sue or maintain the action, and the charges of fraud therein made. The answer takes issue with the petition only, not with the affidavit; the issue so made by the answer is for the jury on the trial of the case on its merits, and is not important on the hearing of this motion.

The grounds for the attachment being thus denied by the defendant, they must be sustained by the plaintiff to the satisfaction of the court; upon the plaintiff, by the denial, is thrown the burden of proof. Harrison v. King, 9 Ohio St. 388.

Considering the motion and reasons for it in the order assigned:

1. As to the legal capacity of the plaintiff to commence and maintain this action.

The grounds for want of capacity to sue, etc., urged by the defendant, are that the plaintiff is not a legally organized corporation; that in the month of March, 1902, one Edgar and others sought to form a savings and loan association under Title 2, Chap. 16 Rev. Stat. of Ohio, with a capital stock of $25,000, divided into shares of $100 each, under the name of The Shawnee Commercial & Savings Bank Company, to be located in the said village of Shawnee, Perry county, Ohio, and do business therein; that they sent a certificate to the secretary of state, about March 22, 1902, certifying that they desired to incorporate under said act, to do business specified in said charter, and that they had fixed their capital stock at the sum of $25,000, divided into shares of $100 each; that said village had at the federal census of 1880 a population of over 3,000 people, and ever since has had a population of over 3,000 people; that thereafter they opened books for subscriptions to the capital stock of said corporation, and at the time of the commencement of this suit, less than $25,000, of the capital stock had been subscribed, nor had one-half of each subscription thereto been fully paid up.

At and prior to the commencement of this action, as shown by the record, articles of incorporation were issued and duly certified by the secretary of state for said corporation. After the certificate of articles of incorporation were issued by the secretary of state, the incorporators, with the defendants participating therein, held meetings, elected directors, including the defendant, Miller, as one of the directors.

Under such state of facts can the defendant attack by allegations or prove the non-incorporation of the company in this proceeding?

If there is a law authorizing incorporation, and a company has attempted to organize under it, and has acted as a corporation, it is a *de facto* corporation, and its *de jure* existence can be questioned only by the state. Gaff v. Flesher, 33 Ohio St. 107, 113; Society Perun v. Cleveland, 43 Ohio St. 481 [3 N. E. Rep. 357], and authorities cited by Owens, J., in opinion.

A party dealing or contracting with a corporation, cannot defeat his obligation by showing that the corporation was never legally incorporated. 2 Cook Corporations, Sec. 637, bottom page 1233; Alexander v. Brown, 13 Re. 241 (2 Disn. 395).

Where a corporation sues for the price of articles sold, the defendant cannot set out that the plaintiff sold the articles before its capital stock was fully paid up, as required by statute. Chase's Pat. El. Co. v. Tow-Boat Co., 28 N. E. Rep. 300 [152 Mass. 428; 9 L. R. A. 339].

Estoppel as to corporate existence seems to be that the corporation is obliged to prove only a *de facto* existence, and need not prove the details of incorporation. Leonardsville Bank v. Willard, 25 N. Y. 573, 574.

It is only necessary to prove that the plaintiff is a corporation *de facto*, to enable it to maintain an action against any one, other than the state, who has contracted with the corporation, or who has done it a wrong. Baltimore & P. Ry. Co. v. Church, 137 U. S. 568 [11 Sup. Ct. Rep. 185].

It is further contended by counsel for the motion that the statutes of Ohio make it a penal offense for such a company, as the plaintiff purports to be, to transact any business unless it comply with the provisions of Sec. 3797 Rev. Stat.; and in support of this contention we are cited to Sec. 3821z Rev. Stat. This section is found in Title 2, Chap. 16 Rev. Stat., and is the closing section of that chapter, as now found in Bates' Annotated Statutes. Looking to this statute, we are of opinion that it has no application to the companies named in Sec. 3797 Rev. Stat., although Sec. 3797 is one of the sections found in this chapter. Section 3821z Rev. Stat. is Sec. 9 of an act passed April 25, 1898, found in 93 O. L. 401; and that is an act entitled "An act to regulate certificate, bond and investment companies, partnerships and associations, other than building and loan companies, and to regulate investment guaranty companies, partnerships and associations doing business on the service dividend plan, and to protect holders of their certificates, debentures and securities." The words in Sec. 9 of said act, "such company, partnership or association," applies solely to the class of partner-

ships and companies named in Sec. 1 of that act; and it is the violation of the provisions of that act alone that is made a misdemeanor and punishable by fine or imprisonment. It has not, and cannot, have reference or application to any of the other sections found in Chap. 16, Title 2, except the sections that are found in the act of which it is a part. This section is not an amendment or supplement to any of the original sections of this chapter. It is an independent act passed long after Sec. 3797 Rev. Stat. was a law. That the compiler of these statutes placed it in Chap. 16 is perhaps appropriate, but the fact that the compiler so placed it there does not, and cannot, of itself make it control the other sections of that chapter. The act does not purport to be a part of that chapter, nor does it purport to modify, supplement or repeal any of the existing laws in that chapter at the time of its passage.

Therefore, we find that Sec. 3797 Rev. Stat. is directory and its violation would not be criminal, nor would it subject the company, or its agents, to penalties named in Sec. 3821-z Rev. Stat. True, the state can interfere and prevent its doing business and forfeit its charter for non-compliance with the provision of Sec. 3797 Rev. Stat., but the fact nevertheless remains that this corporation, while not organized in conformity with the laws directing its formation, yet the business it is doing is not criminal, and, therefore, the usual rule as to *de facto* corporations, which we have before stated, would apply to this corporation, though it would not apply to a corporation doing a business made criminal by the laws of Ohio.

We do not discover any error in the record or ruling of the judge in overruling defendants' motion as to first ground; and the court further hold that the plaintiff, under the facts stated, is a corporation *de facto,* and has capacity to bring and maintain this action.

2 Is the affidavit sufficient to authorize or justify the issuance of said attachment?

(a) It is contended that the affidavit is defective in not stating or showing that Edward G. Blair was the agent of the plaintiff and authorized to make it.

The affidavit shows that Edward G. Blair being sworn says: "That he is a director and agent of the plaintiff, The Shawnee Commercial & Savings Bank Company, a corporation duly incorporated under the laws of Ohio."

Section 5522 Rev. Stat. provides, that the affidavit for an attachment under Sec. 5521 Rev. Stat., may be made by the plaintiff, his agent or attorney.

In an affidavit for an order of attachment, under said section, or under the old section of the code, 192, made by the plaintiff's attorney,

it is not necessary to show why the affidavit was not made by the party himself, or that the facts stated in the affidavit were within the personal knowledge of the affiant. White v. Stanley, 29 Ohio St. 423.

The court, at page 427, say:

"The court of common pleas did not err in overruling the motion of defendants to discharge the attachment. Section 192 of the code (now section 5522) authorizes the making of an order of attachment upon the 'affidavit of the plaintiff, his agent or attorney,' showing certain facts therein enumerated. The sufficiency of an affidavit for an order of attachment made by the plaintiff's agent or attorney is determined by the same tests as one made by the party himself. There is no such limitation upon the power of an agent or attorney to make an affidavit for an attachment as is prescribed by Sec. 1136 of the code (now Sec. 5109). This section was intended to apply only to affidavits in verification of pleadings. This is rendered clear from the context of the section as well as by its terms."

Therefore, we hold the objection to the affidavit as to form, as having been made by the agent, Blair, is not well taken.

(b) Is it defective in substance or insufficient in allegation of facts?

Section 5521 Rev. Stat. provides the grounds upon which an attachment may issue. Subdivision 9 of the section provides when the defendant, "Has fraudulently or criminally contracted the debt, or incurred the obligation, for which suit is about to be or has been brought," an attachment may issue.

The grounds for an attachment may be stated in the affidavit in the language of the statute, without specifying more particularly the facts to be alleged. Coston v. Paige, 9 Ohio St. 397, Emmitt v. Yeigh, 12 Ohio St. 335. Such statement is not invalidated by adding thereto a statement of such particular facts as, upon a fair and reasonable construction, would justify a belief in the truth of the general statement. Emmitt v. Yeigh, *supra*; Harrison v. King, 9 Ohio St. 388.

The charge in the affidavit in this case is, a claim for damages for the false and fraudulent representations and fraudulent acts, arts and practices of the defendants in the sale of property to the plaintiff for the sum of $5,837.74, whereas in truth said property was of the value of $1,000, and no more, as defendants well knew, and plaintiff did not know to the contrary, but relied on defendants' said representations; and further, in falsely and fraudulently pretending to be stockholders in and directors of plaintiff when they were not in fact either, and in voting as directors at their meeting for the purchase of said property, the said directors not then knowing that said defendants were not such directors and stockholders.

Savings Bank Co. v. Miller.

The affidavit is sufficient to charge actual fraud and the fraudulent incurring of the obligation under the statute; and is sufficient to and does charge the defendants with committing and intending to commit actual fraud. It is not a charge of constructive fraud, and, therefore, it does not fall within the rule of decision in Union Roll. Mill Co. v. Packard, 1 Circ. Dec. 46 (1 R. 76).

The judge did not err in overruling defendants' motion in the second ground therein set forth.

3. That the facts stated in said affidavit as grounds for issuing the attachment are not true.

Here the most difficult questions, both as to law and fact, are presented.

Evidence was submitted to the judge on this issue. The motion was sustained and the attachment discharged on this ground. A bill of exceptions containing the evidence, both oral and written or documentary, was taken and filed in this court.

The testimony established conclusively the following facts:

I. That the defendants, and especially Miller, were the promoters of the plaintiff company. They procured its incorporation, or at least the issuing of the certificate and articles of incorporation, secured the stock subscription, named the board of directors, selected the finance committee, had themselves chosen as members of the board of directors, acted as such directors, sold the furniture and fixtures to the plaintiff corporation, they both acting and voting as directors, and urged the purchase of the property by the board for the company.

II. At the time of the purchase and before the purchase was made, they both represented to the other directors that the furniture and fixtures so purchased were cheap at the price sold, namely, $5,116.42.

III. They both represented and claimed at the time of the purchase, that they were each the owner of thirty shares of the capital stock, and were paying sixty per cent. of the purchase price of the furniture and fixtures.

IV. The furniture and fixtures were not worth to exceed $1,700.

V. The value of the furniture and fixtures was unknown to the other members of the board of directors; they were men without experience as to values of property of that kind, and in this regard did not stand equal in experience or in opportunities for knowing the value of property of that kind or of the ownership of said stock with the defendants. The other members of the board relied upon the representations of defendants as to value of said property and as to their ownership of stock as represented and claimed by them, namely, that they owned

sixty shares and were paying sixty per cent. of the purchase price of said furniture and fixtures.

VI.   Miller did not become a stockholder until June 23, 1902, long after said purchase was made, then of one share only.   Edgar never was a stockholder.

The above facts are clearly shown and established by the evidence contained in the record.

Both in England and in the United States, promoters of corporations or other enterprises have been held to occupy a fiduciary relation towards one another, and towards the company or corporation, whose organization they seek to promote.   The principle of law necessarily resulting from the doctrine is, that the promoters must act in good faith with one another, and with the corporation, and such special advantages or profits as they reserve to themselves must not be secret.   In other words, they will not be permitted to assert, either expressly or by necessary implication, that they are forming a corporation upon terms which give them no special profit or advantage, while, in fact they are intending to reap benefit of which their fellow-promoters or subsequent subscribers have no notice.

The principle is stated by Morawetz Corporations (2 ed.), Sec. 545, in these words:

"The relation between the promoters of a corporation and its agents and shareholders is often of such a character as to render their dealings liable to be scrutinized by the court with great strictness.   Promoters of a company usually represent themselves to be deeply interested in its success and are instrumental in inducing the subscription of the shares by means of representations and promises in relation to the projected enterprise.   As a rule the promoters possess absolute control over the policy and operation of the company when it is first formed, and in many instances the first board of directors of the company consist of nominees of the promoters and is wholly within their control.   The subscriptions of the shareholders are made upon the trust that the promoters are men of rectitude and business sagacity, who will use their knowledge and exercise their control over the enterprise for the benefit of the company. It is evident that a corporation dealing with its promoters under such circumstances would not meet them on equal footing.

"Accordingly it has been held that if persons start a company, and induce others to subscribe for shares for the purpose of selling property to the company when organized, they must faithfully disclose all facts relating to the property which would influence those who formed the company in deciding upon the judiciousness of the purchase.   If the promoters are guilty of any misrepresentation of facts or suppression

of the truth in relation to the character and value of the property, or their personal interest in the proposed sale, the company will be entitled to set aside the transaction or recover compensation for any loss which it has suffered."

In the case of Yeiser v. Board & Paper Co., 12 O. F. D. 678, 682, 686 [107 Fed. Rep. 340; 46 C. C. A. 567], Severens, J., says:

"It is a well settled principle of equity that those who participate in bringing about the organization of an incorporated company, and in getting it in condition for transacting the business for which it is organized, assume the obligations of a trust toward the company and those who shall be invited to come into the enterprise as stockholders and share in its fortunes. The latter have the right to rely on the good faith and fair dealing of those who have promoted the company, and to assume that they have not perverted the organization by secret means to the accomplishment of selfish purposes and the destruction of that equality of right which, in the absence of some known modification, all the shareholders are entitled to enjoy. Indeed, some of the decided cases hold a wider doctrine and declare that whether the promoter becomes a stockholder himself or not, he owes a like duty to those who become such, and cannot, by covert manipulation of the company, while it is under his control, and without the faculty of acting for itself, take a personal profit from his dealings with it. The recognition of a fiduciary relation in such circumstances is merely for the application of a familiar principle of equity, which fastens a trust upon one who has such power over another and his affairs as to give the former an opportunity to make personal gains in his dealings with them.

"In this country the courts have accepted the essential principle laid down in the English cases, and hold with scarcely any variation to the doctrine that the promoter of a company stands in the relation of a trustee to it and those who become subscribers to its stock so long as he retains the power of control over it. There is some difference of opinion, as there is in the English cases, in regard to the time when he becomes such promoter within the meaning and operation of the rule. Some courts are of opinion that he is chargeable with the duties of a trust when he enters upon the execution of the scheme which is intended to result in the transfer of the property to a company to be organized and controlled by him. All, however, agree that he comes within the rule when he begins to organize the company, and that from that time he is bound to deal openly and fairly, and in such a way as that those having independent charge of the company, as well as those who are induced to become subscribers to its stock, may be fully advised of the relation he bears to the property which he proposes to sell, in like

manner as one who assumes to act as the agent of another in the purchase of property.

"We refer to a few of the well considered cases in this country which support what we regard as the doctrine settled upon sound reasons. Brewster v. Hatch, 25 N. E. Rep. 505 [122 N. Y. 349; 19 Am. St. Rep. 498]; South Joplin Land Co. v. Case, 16 S. W. Rep. 390 [104 Mo. 572]; Hebgen v. Koeffler, 72 N. W. Rep. 745 [97 Wis. 313]; Densmore Oil Co. v. Densmore, 64 Pa. St. 43; Hayward v. Leeson, 57 N. E. Rep. 656 [Mass.]; Burbank v. Dennis, 35 Pac. Rep. 444 [101 Cal. 90]; Yale Gas Stove Co. v. Wilcox, 29 Atl. Rep. 303 [64 Conn. 101; 25 L. R. A. 90; 42 Am. St. Rep. 159]."

"The company, as well as the stockholders, are entitled to the benefit of the independent judgment of the trustee in regard to the value of the property to be purchased, and the price to be paid, as well as its fitness for the intended use. It is said that the property was worth what the company paid for it, and is adapted to the company's requirements. It happens so. But this in no manner affects the operation of the rule."

See also the case of Second Nat. Bank v. Fence Post Co., 13-23 O. C. C. 274, opinion by Sullivan, J., and authorities there cited.

In Teachout v. Van Hoessen, 76 Ia. 113 [40 N. W. Rep. 96; 1 L. R. A. 664; 14 Am. St. Rep. 206], it was held:

"A statement by a person owning property which is to be turned into the corporation at cost, as to its value, which is acted upon by the other parties, who put in money upon the basis of such value, is not a statement of opinion, but a fact, and if false will entitle the others to recover back the overpayment made by them."

Again:

"If a vendor has superior knowledge of the property sold, and knowingly gives a false opinion in regard to a material fact with an intention of defrauding the purchaser, an action may be maintained against him for fraud." Collins v. Jackson, 19 N. W. Rep. 947 [54 Mich. 186].

If a statement of value is connected with a false representation of an extrinsic fact calculated to put the other person off his guard and induce him to give credit to the representations of value, it may be fraudulent. Miller v. Barber, 66 N. Y. 558; Simar v. Canaday, 53 N. Y. 298 [13 Am. Rep. 523].

If the case does not fall within one of the well defined classes the rule is, that the question whether it is opinion or fact is for the jury. Messer v. Smyth, 59 N. H. 41; Simar v. Canaday, 53 N. Y. 298 [13 Am. Rep. 523].

Savings Bank Co. v. Miller.

We recognize the general rule of law to be, that a naked assertion by a vendor of the value of property offered for sale, even although untrue of itself, and known to be such by him, unless there is a want of knowledge by the vendee, and the sale is made in entire reliance upon the representations made, or unless some artifice is employed to prevent inquiry or the obtaining of knowledge by the vendee, will not render the vendor responsible to the vendee for damages sustained by him.

In this case the record shows that the board of directors were thrown off their guard to make inquiry, when the defendants falsely represented that they were stockholders owning sixty shares of the stock of the company, and would therefore pay sixty per cent. of the purchase price, and for these reasons, as claimed by the defendants, the other directors could not "kick" at the price.

These representations as to their interest in the corporation were untrue, and the defendants knew they were untrue, and suppose the other members of the board had equal means of knowing the falsity of their statement, yet they had a right to rely upon such representations coming from those who stood in fiduciary relation to the corporation and its stockholders, and they had a right to rely thereon without making further inquiry as to the truth thereof. Their opportunities and experience as to the value of such property were not equal to that of the defendants, the promoters of the enterprise, and for which the property was being purchased, and it is immaterial that the directors of the corporation knew of the fraud. 1 Thompson Corporations, Sec. 468; Redding v. Wright, 51 N. W. Rep. 1056 [49 Minn. 322].

But aside from these considerations, we are confronted in this record with the fact that Miller and Edgar, whether stockholders or not and eligible to be elected directors, were elected directors of this corporation and they proceeded to and did act as such directors.

If they participated in the sale to the corporation of their property at about three times its real value, and urged such sale and voted for it, this fact alone is a fraud upon the corporation, its stockholders and its creditors. These men, as directors, were charged with the exercise of the utmost good faith in their dealings with the corporation. They were placed in office for the purpose of protecting the rights of the corporation and its stockholders and creditors, and not for the purpose of enabling them to sell this corporation their property at three times its value, and thereby make gains to themselves at the expense of the persons to whom they stood in fiduciary relation.

The mere fact that they voted on the part of said corporation to consummate such a bargain and sale is a fraud *per se*, and that the other directors, either with or without knowledge of the fraud, voted with

them, aided and assisted them in making such a deal, is no excuse for them and affords them no defense to this action. If every other director of this corporation had equal knowledge of the value of this property, and with such knowledge aided and abetted them in perpetrating this fraud on the corporation, its stockholders and creditors, it would in no wise relieve them from responsibility for their fraud, because it was their duty to protect the property and funds of this corporation, not only from the outside world, but also from themselves; and it is evident that whatever they may have done with reference to protecting it from the outside world, they made no effort to protect this corporation from their own rapacity, but were in fact chiefly instrumental in bringing about the sale of this property to the corporation at a price largely in excess of its fair value.

If this contention were simply between the directors of this corporation, as individuals on the one side, and the defendants on the other, we would leave these directors to suffer the consequences of their own folly. For, to say the least, their conduct was not only grossly negligent, but reprehensible in the highest degree. But they are not the only ones to suffer by this fraud of the defendants and this carelessness and negligence of the directors. The stockholders and creditors of this corporation had no voice in the matter. They had placed these men, together with Edgar and Miller, in charge of their property to protect them, and for no other purpose. That the defendants used their position for personal gain, as is shown by the record, and though the directors may have permitted them to do so, it furnishes no excuse or defense for these defendants in this action.

Therefore, we find that these acts of the defendants, Miller and Edgar, in urging and voting for this purchase of their property by this company, was in dereliction of their duty and an actual fraud upon the corporation, its stockholders and creditors, without reference to whether the conduct of their codirectors was negligent, reprehensible or even fraudulent.

Without further citation of authorities or discussion, we think the finding of the judge was clearly against the evidence, and contrary to law; and his holding and judgment on the third ground of the motion is reversed with costs; his holding on first and second grounds is affirmed with costs. The cause is remanded to the common pleas with instructions to overrule the motion to discharge the attachment and for further proceedings therein.

To all of which holdings and judgment of this court defendant excepts.

DOUGLASS and DONAHUE, JJ., concur.