HEBGEN and others, Respondents, vs. KOEFFLER, imp., Ap-
pellant.

*October 2 — October 22, 1897.*

*Corporation: Relief against fraud of promoters: Ratification.*

1. In an action by stockholders of a corporation for the benefit of the
corporation and all its stockholders, against the promoters thereof,
proof that such promoters, having obtained the right to purchase
a certain tract of land for $31,000, induced the plaintiffs to. join
them in forming a corporation for the purpose of purchasing said
land for $55,000, and afterward selling it, by representing that it.
was a mutual enterprise in which the several stockholders were·
on an equal footing in all respects, and themselves ostensibly sub-
scribing for stock, but there was a secret understanding between
such promoters that they should appropriate the difference be-
tween such sums to their own use as their profits in the transac-
tion; that the corporation was organized, and such promoters pro-
cured themselves to be elected directors and managing officers,.
and made the purchase of the land, ostensibly for $55,000, but in
reality for $31,000, and secretly appropriated the difference to·
their own use, *held,* sufficient to support findings that the plaint-
iffs were entitled to have the sale of the land to the corporation
rescinded on the ground of fraud, and to recover from such pro-
moters the moneys received by them in the transaction.

97 313
f99 57
d99 226

97 313
103 135
f103 534

97 313
106 489

97 313
110 ¹551
52 LRA 729

97 313
52 LRA 729

2. In such a case, the payment by the plaintiffs of an assessment on their stock, to apply on the purchase of such land, believing that the price to be paid therefor was $55,000, did not constitute a ratification on their part of such fraudulent sale to the corporation.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

This was an action, among other things, to rescind a sale of real estate on the ground of fraud, and to recover of the promoters of a corporation profits alleged to have been fraudulently made by them. The trial resulted in findings in plaintiffs' favor, which cover the issues formed by the pleadings. So far as necessary to the decision of this appeal, such findings are as follows:

1. Plaintiffs are stockholders of the corporation hereafter named, and this action is brought for the benefit of such corporation and the stockholders thereof.

2. Defendant Van Eimeren was the owner of the lands described in the complaint. H. J. Mabbett had the exclusive right to sell such lands for $700 per acre, to be paid: $14,000 as soon as the papers were ready (out of which $100 was to be deducted), and the balance within five years from the exchange of papers, with interest at the rate of five per cent. per annum, payable annually, secured by a mortgage on the premises.

3. Defendant *Hugo Koeffler*, for the sum of $6,000, obtained the Mabbett interest in the lands, and on the same day he obtained from Van Eimeren a land contract, whereby the latter agreed to sell said lands to *Koeffler* for $700 per acre, payable: $600 down at the making of the agreement; $13,400 on or before January 2, 1893; and the balance five years from the date of the delivery of the deed, the deferred payments to be secured by a mortgage on the premises, and the total purchase price to be $31,000. Thereafter *Koeffler* sold a one-third interest to defendant Preusser.

4. *Koeffler* and Preusser then formed a plan for organ-

izing a corporation for the purpose of turning the lands over to it for $55,000, and of thereby making a profit out of the transaction at the expense of such persons as they might induce to become associated with them in such corporation.

5. Pursuant to the plan mentioned, *Koeffler* and Preusser prepared a subscription paper which bound the subscribers to join in the organization of a corporation for purchasing the Van Eimeren farm for $55,000, to be paid: $25,000 on the 20th day of December, 1892; $13,000 January 2, 1895; and $17,000 January 2, 1898, with interest on the deferred payments; and to take stock in the corporation for the amount set opposite their names, and pay therefor as required by the board of directors.

6. Said paper was so prepared as to conceal the interest of *Koeffler* and Preusser therein and to induce those who signed it to believe that the promoters were going into the corporation on the same basis with other subscribers.

7. *Koeffler* employed one Fernekes to assist in obtaining subscriptions, and, to make it appear that Fernekes was to be a stockholder, caused him to subscribe for $3,000 of the stock, but the subscription was in fact for *Koeffler*. *Koeffler* subscribed $10,000 in his own name, and Preusser $10,000. *Koeffler* and Fernekes obtained subscriptions to the balance of the stock of 550 shares of the par value of $100 each.

8. None of the plaintiffs who signed the agreement would have signed it had they known that *Koeffler* or Preusser had any interest in the land other than as subscribers to the agreement or that the land was to be purchased so as to give them a secret profit.

9. After the subscriptions were obtained the corporation was organized and the stock taken. Thereupon a meeting of the stockholders was had, at which *Koeffler* and Preusser represented a majority of the shares, and a board of directors was elected, including *Koeffler* and Preusser.

10. Immediately after the election of the board of direct-

ors, they held a meeting at which Preusser was elected president and *Koeffler* secretary and treasurer. Then a resolution drawn by *Hugo Koeffler* was adopted, referring an abstract of the property to his brother, defendant C. A. Koeffler, Jr., for examination, and, with the proviso that if the title was reported good, the president and the secretary should buy the property for the company, according to the agreement contained in the subscription list, draw the necessary money from the corporation treasury to make the down payment, and execute the necessary papers to complete the transaction. To provide for the down payment an assessment of forty-six per cent. was immediately made on the stock, which assessment was paid. Nothing was said at this meeting to indicate that *Hugo Koeffler* or Preusser had any interest in the land different from other stockholders, and all of the stockholders, except those engaged in the scheme for secret profits, believed that the purchase was to be made of Van Eimeren by the corporation for the full sum of $55,000.

11. On the 10th day of January, 1893, *Hugo Koeffler* made, in his official capacity, a check for $25,000 payable to the order of Mabbett & Jefferson, as agents of Van Eimeren, and delivered it to such agents. Such check was paid out of the corporation moneys, and the money was disbursed by paying $13,400 to Van Eimeren and the balance to *Hugo Koeffler*. Upon such payment being made to Van Eimeren, he and his wife made a deed of the lands to *Hugo Koeffler*, who mortgaged the same back to Van Eimeren to secure payment of $17,000, according to the terms of the contract before mentioned. *Hugo Koeffler* made a deed to the corporation, conveying the premises for the consideration of $55,000. Such consideration was made up of the $25,000 paid as aforesaid, the $17,000 mortgage put on the property by *Koeffler*, which the corporation, by a proper clause in the deed, agreed to pay, and a second mortgage for $13,000 made

on behalf of the corporation by *Hugo Koeffler* and defendant Preusser, as its officers, in favor of said *Hugo Koeffler*, the agreement between *Koeffler* and Preusser being that the latter should have a one-third interest in the deferred payment of $13,000. Said Preusser also received from said *Hugo Koeffler* one third of the $11,600 paid to the latter out of the proceeds of the $25,000 check.

12. The corporation is still the owner of the lands conveyed as aforesaid. Interest upon the mortgages, amounting to $1,700, has been paid, and taxes upon the lands of $45.64, which payments were made while plaintiffs were ignorant of the secret profits made as aforesaid. Interest on the money taken out of the treasury of the corporation to date amounts to $5,591.52. Van Eimeren still owns the $17,000 mortgage. Defendant Charles A. Koeffler holds the $13,000 mortgage and the note it secures, as security for a loan made by him to *Hugo Koeffler*, but he took the same with knowledge of all the facts.

13. None of the plaintiffs ever ratified the aforesaid conduct of *Hugo Koeffler* and Herman Preusser in regard to obtaining secret profits, or knew the facts in regard to such conduct till about the time of the commencement of this action. They have repudiated the sale by *Koeffler* and Preusser to the corporation, and, before the commencement of this action, demanded of Charles A. Koeffler that he release the mortgage of $13,000 and return the same, with the note it purports to secure, to the corporation, which was refused. Plaintiffs also made a like demand upon Van Eimeren in regard to the $17,000 mortgage, which was refused, and have acted with due diligence in the premises.

The conclusions of law, among other things, were that plaintiffs were entitled to judgment rescinding and annuling the sale of the lands to the corporation, and releasing the corporation from all liability on the $17,000 note and mortgage, and also on the $13,000 note and mortgage, and to

judgment that defendants *Hugo Koeffler* and Herman Preusser are liable to the corporation for $25,000 and interest thereon of $5,591.52, and for other relief particularly provided for, requisite to enforce such liability of *Hugo Koeffler* and Herman Preusser.

Numerous exceptions were filed to the findings of fact and conclusions of law, and judgment was entered in accordance with the findings, from which judgment defendant *Hugo Koeffler* appealed.

*C. A. Koeffler, Jr.,* for appellant, argued, among other things, that the plaintiffs could not have a rescission because they had not tendered back their stock. *Getty v. Devlin,* 54 N. Y. 414, 415; *Cobb v. Hatfield,* 46 id. 533; *Masson v. Bovet,* 1 Denio, 69; *Voorhees v. Earl,* 2 Hill, 288; *Hogan v. Weyer,* 5 id. 389; *Building & Loan Asso. v. Cameron,* 48 Neb. 124. Rescission is impossible because the rights of the appellant and of all the stockholders, some of whom are not parties to the suit, cannot be adjusted. *Yale Gas Stove Co. v. Wilcox,* 25 L. R. A. 105; *Ladywell Mining Co. v. Brookes,* 35 Ch. Div. 400; *Franey v. Warner,* 96 Wis. 222; *Potter v. Taggart,* 54 Wis. 395; *Churchill v. Price,* 44 id. 540. The appellant was the owner of the land under a land contract at the time the subscriptions were made, and had a right to sell it to the corporation at an advance without disclosing his profit. *Brewster v. Hatch,* 123 N. Y. 349; *Lungren v. Pennell,* 10 Weekly Not. Cas. (Pa.), 269; *Burbank v. Dennis,* 101 Cal. 90; *Gover's Case,* 1 Ch. Div. 182; *Densmore Oil Co. v. Densmore,* 64 Pa. St. 43. The stockholders are estopped from complaining because, having the means of knowledge of the facts constituting the alleged fraud, they afterward paid assessments and acted as stockholders. *Bosley v. National Machine Co.* 123 N. Y. 550; *Chubb v. Upton,* 95 U. S. 669.

*Nathaniel S. Robinson,* for the respondents.

MARSHALL, J.   There is no controversy but that the judg-
ment appealed from is sustained by the findings of fact and
conclusions of law.   Questions of law are discussed in the
briefs of counsel but not reached in the consideration of the
case, unless some of the findings of fact, to which reference
will be made, are first disturbed.   The findings, as they
stand, are to the effect that defendant *Hugo Koeffler*, at an
expense of $6,000, obtained the right to purchase of Van
Eimeren a tract of land for $31,000, payable $600 down,
$13,400 January 2, 1893, and the balance January 2, 1898,
with interest; that he then associated with him defendant
Preusser in a scheme to form a corporation to take the land
for $55,000 and to divide the profits of the transaction be-
tween himself and Preusser, two thirds to the former and
one third to the latter; that pursuant to such scheme they
prepared a subscription paper so worded as not to disclose
the true ownership of the land, but to induce signers to be-
lieve that it belonged to Van Eimeren, and to bind them to
join in forming a corporation to purchase such land for
$55,000, payable $25,000 down, $13,000 January 2, 1895, and
$17,000 January 2, 1898, with annual interest; that in order
to induce signers not in the scheme to believe that the pro-
moters purposed becoming stockholders on the some basis as
others who joined in the apparently mutual enterprise, they
each signed for $10,000 of the stock, and one Fernekes, who
was employed to assist in obtaining subscriptions, signed for
$3,000, to make it appear that he was going in with others,
while such subscription was in fact for *Koeffler;* that the
whole stock of $55,000 was subscribed and the corporation
was thereupon organized; that *Koeffler* and Preusser pro-
cured themselves to be elected as directors and managing
officers, and the sale of the real estate to the corporation to
be consummated, ostensibly by Van Eimeren for $55,000,
but really for $31,000, the promoters taking the difference
over the cost to them for profits of the deal, without the

other stockholders having any idea but that the purchase was made of Van Eimeren for the full sum of $55,000.

It needs no discussion of the subject to show that such facts make a clear case for relief against the promoters, either in equity, by or for the benefit of the corporation, to rescind the sale and recover the consideration paid for the property, or in any one of several other ways that might have been adopted. *Pittsburg Mining Co. v. Spooner*, 74 Wis. 307; *Fountain Spring Park Co. v. Roberts*, 92 Wis. 345; *Franey v. Warner*, 96 Wis. 222. The last case cited was very recently decided by this court and the subject there fully discussed and the law stated in substance that, 'if a person invites others to join him in the purchase of property at a given price, falsely representing that the purchase is to be made of a third person and that all are to share equally in the cost and equally in the benefits of the enterprise, and such others join with such person on the faith of such representations, and the purchase be made accordingly, each of the *bona fide* purchasers paying his proportion of the money, and such person acquires secretly a profit to himself by reason of having obtained the property after the making of the mutual agreement at a less sum than the price made to his associates, or by reason of having acquired the property himself at a less price before the sale, it is a fraud upon such others, and each may, by restoring such person to his original situation, rescind the transaction and recover his money in an action at law, or he may offer to rescind, and, by keeping such offer good, sue in equity for a rescission of the contract and for a recovery of his money, or, without restoring, he or all similarly interested joining, may sue in equity to charge such person as trustee of the profits fraudulently retained by him, and for an accounting; or each may sue such person at law for damages for the fraud to the extent of the enhanced value he paid by reason thereof. A person so circumstanced stands in a relation of trust and confidence to all his *bona fide* as-

sociates, and holds all the profits secretly made for the common benefit of all engaged in the common enterprise, in proportion to their respective interests; and such is the case whether the purchase be made by such person before or after the agreement for the mutual enterprise.'

Appellant, in order to avoid the result of the facts found by the trial court and the settled law applicable thereto, assigns as error that the eighteenth finding of fact is contrary to the evidence, and says that, if such be not the case, the sale to the corporation was nevertheless ratified by the stockholders with knowledge of the facts, contrary to the twenty-seventh finding. Such eighteenth finding is to the effect that when the corporation proceedings were had, directing the purchase of the land for $55,000 and providing a fund to make the down payment of $25,000 by calling in forty-six per cent. of the amounts due on the stock subscriptions, the stockholders, except those in the fraudulent scheme, believed that the purchase was to be made of Van Eimeren for the full sum of $55,000; and the twenty-seventh finding is to the effect that none of the plaintiffs, after the time mentioned in the eighteenth finding, in any way ratified the conduct of the promoters. It is clear that if the eighteenth finding stands, in view of the other facts in respect to which there is no serious controversy, the judgment cannot be disturbed unless the twenty-seventh finding be contrary to the evidence. The evidence in the record bearing on each of such findings has been examined with care. No valuable purpose can be served by referring to it at length or in detail. It is enough to say that it is ample to support the findings; hence the judgment appealed from must be affirmed.

*By the Court.*— So ordered.