ARTURO GIGANTE, for himself and as father with *patria potestas*, etc., Plaintiff and Appellee, *v.* JOSÉ ÁLVAREZ, Defendant and Appellant.

No. 6715. Argued May 3, 1935.—Decided May 20, 1935.

C. *Iriarte* and *F. Fernández Cuyar* for appellant. *La Costa & La Costa, Jr.*, for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the court.

On March 14, 1933, as Georgina Gigante, a girl six and one-half years old, was passing in front of the house of the defendant-appellant at No. 28 Pacific Place, Santurce, Puerto Rico, a police dog called Nerón, which was at the time in the possession and custody of the defendant-appellant, bit her in the left gluteal region and threw her to the pavement.

The complaint in this action, which was brought by Arturo Gigante for himself and as the father with *patria potestas* over his minor daughter, Georgina Gigante, contains two causes of action. The first begins by alleging that the plaintiff is the legitimate father with *patria potestas* over the minor Georgina Gigante, and further on, in the third, fourth, and fifth paragraphs of the complaint, the cause of action is set up in the following terms:

"3. On March 14, 1933, while Georgina Gigante, the daughter of the plaintiff, was passing along the street in front of the residence of the defendant, at No. 28 Pacific Place, in the district of Santurce in the Municipality of San Juan, Puerto Rico, the said dog of the defendant, which was loose and unmuzzled, attacked the person of the said Georgina Gigante, throwing her to the pavement and inflicting serious bites and scratches on several parts of her body.

"4. As a result of the said accident, the said Georgina Gigante has suffered, and is now suffering, intense nervous spells, uneasiness, insomnia, she has lost her health and is in a constant state of restlessness, she has suffered strong pains in her entire body and has suffered mental and moral anguish and intense physical pain and had to have medical assistance.

"5. As a consequence of the above-alleged facts, the plaintiff daughter has suffered damages amounting to FIVE HUNDRED AND FIFTY DOLLARS ($550), distributed as follows:

"For nervous spells, uneasiness, insomnia, loss of health, physical pains, and mental and moral anguish, $500; medicines and medical assistance, $50, $550."

In the second cause of action it is alleged that the plaintiff, as a consequence of the suffering and the pain experienced by his daughter, lost his peace of mind for many days, having suffered mentally and morally and having been very frightened, for all of which he claims the sum of $500.

The defendant filed a demurrer for insufficiency directed against this second cause of action, and contended that a father cannot recover mental and moral damages due to personal injuries suffered by a minor daughter. The court sustained the demurrer to the second cause of action, for the reason stated, and rendered judgment for the plaintiff on the first cause of action, adjudging the defendant-appellant to pay to the plaintiff Arturo Gigante, for himself and as the father with *patria potestas* over his minor child, Georgina Gigante, the sum of $350 as damages suffered by the said minor as a result of the bite of the dog possessed by the defendant, with costs and attorney's fees.

Three errors are assigned by the appellant: The first deals with the award of costs, the second with the amount of the damages granted which, in the opinion of the defendant, should not have exceeded $50, and the third with the weighing of the evidence which is said to be manifestly erroneous.

We will first consider the second assignment of error, which is the only one important enough to merit careful consideration. The appellant argues that, according to the allegations of the complaint, it is Arturo Gigante, and not his daughter Georgina, who brings the action. Attention is called to the text of the complaint, which repeatedly speaks of the plaintiff, and to its prayer, asking for a judgment ordering the defendant to pay to the plaintiff the sum claimed.

It is further said that, to make it clearer, Arturo Gigante swears that he is the plaintiff in the action.

As we have seen, the allegations of the complaint tend to establish two causes of action separately alleged. One of them, the second, was dismissed for insufficiency, and no appeal was taken from this decision of the lower court. The first cause of action stands, and the only question to be decided is whether this action is brought for the benefit of the minor or exclusively for the benefit of her father, Arturo Gigante.

In the instant case, Arturo Gigante appears for himself and as the father with *patria potestas* over his minor daughter, Georgina Gigante. In the second cause of action, which was dismissed by the lower court, Mr. Gigante alleges that he has suffered damages as a result of the accident of his daughter; in the first, the damages, according to the allegations, were inflicted on the minor. We agree that the real party in interest should appear as the plaintiff in the action, but can it be said that the complaint in this action does not show that the first cause of action is for the benefit of the minor, represented by her father?

We have carefully read the allegations which are the basis of the cause of action set up. They contain an account of the physical and moral suffering of the child Georgina Gigante, and it is said that she has suffered damages estimated at $550. In this cause of action it is not alleged that the plaintiff Arturo Gigante has suffered damages. On the contrary, it is stated that it was the child Georgina who suffered them. It is clear and evident that Arturo Gigante cannot claim for himself an indemnity which, according to the pleadings, corresponds to his daughter. It can not be supposed that the father has brought an action for damages which he has not suffered and to which he has no right. The allegations of the complaint show that this first cause of action, to which the complaint has been reduced, was brought for the benefit of the child and not of the father. The court itself seems

to have so understood it when it adjudged the defendant to pay to the plaintiff the sum of $350 *for the damages suffered by the said minor as a result of the bite of the dog possessed by the defendant.* If the decision of the court *a quo* grants only an award for the damages suffered by the minor, it is clear that the sum granted belongs to her and she is entitled to recover it through her legal representative. The lower court committed an error which should be corrected in adjudging the defendant to pay the sum granted to Arturo Gigante for himself and as the father with *patria potestas* over his minor daughter Georgina. The father of the minor, who is the plaintiff in his representative capacity, cannot claim for himself any share in the award for damages which, according to the facts alleged, were inflicted on his daughter.

That Arturo Gigante did not intend to bring this action exclusively for his own benefit is shown by the dual capacity in which he appears, for himself and as the father with *patria potestas* over the minor, and by the two causes of action into which the complaint is divided, one of which alleges, as a consequence of the dual capacity, damages to the father because of his anguish and suffering, and the other, damages to the daughter as a result of the accident. As we have already said, it is deduced from the complaint that in this first cause of action Arturo Gigante acted in his representative capacity. We do not see a great difference between the appearance of the father representing the child and that of the child represented by the father. The essential thing is that the allegations of the complaint and the nature of the action brought show clearly that the ward is the real party in interest, and that the guardian or father, as the case may be, sues in his representative capacity.

In the case of *Bennett* v. *Bennett,* 91 N.W. 409, decided by the Supreme Court of Nebraska, the guardian filed a complaint describing himself in the title thereof as "Levi Bennett, Guardian of Emery W. Tutle," and without expressly stating in the pleading that he was suing as guardian. The

complaint was attacked on the ground that it was filed by the guardian personally and not by the ward. In deciding the question raised, the court expressed itself as follows:

"A considerable portion of the argumentation on behalf of appellant has been directed to the sufficiency of the petition. In the title, plaintiff describes himself as 'Levi Bennett, Guardian of Emery W. Tutle', and he does not state anywhere in the petition expressly that he sues as guardian. For this reason, and because the words 'guardian of Emery W. Tutle' might, in strictness, be treated as *descriptio personae* only it is urged that this suit is brought by Levi Bennett in his personal, and not in his representative, capacity, and is not maintainable. But so long as the plaintiff describes himself as guardian alleges his appointment as such, and by the allegations of the petition and nature of the action shows clearly an intent to sue in his representative capacity, we may fairly so contrue his pleading, notwithstanding his failure to say expressly that he sues as guardian. *Williams* v. *Eikenbary*, 36 Neb. 478, 54 N. W. 852."

In the case of *Metropolitan Life Insurance Co.* v. *Fitzgerald*, 209 S.W. 77, 79, the Supreme Court of Arkansas said:

"The trend of our decisions shows that the statute requiring every action to be prosecuted in the name of the real party in interest has received a very liberal construction, with the view of effectuating the wise purpose to permit those who are the real parties in interest to a cause of action to maintain the suit. (Citations)."

The object of the rule that the action should be brought in the name of the real party in interest is to avoid submitting the defendant to future litigation for the same cause of action. In a case like the present one, the defendant is secure. The capacity in which Arturo Gigante appears, the facts alleged in the complaint, and the conclusions established by this court constitute a complete protection for the defendant.

It is argued that in this cause of action $50 is asked for medicines and medical assistance, which should be claimed by the father and not by the daughter. The truth is that this is an indemnity which the father may claim, but there are decisions which hold that if the father includes in the

claim items which correspond directly to him, the minor is authorized to recover them, and the father may not later bring an action to claim them.

In the case of *Flessher* v. *Carstens Packing Co.*, 165 Pac. 397, the plaintiff brought an action claiming damages caused him by an accident of which his daughter was the victim. It was alleged that the items claimed in the complaint had been included in an action previously brought by the same plaintiff as the guardian *ad litem* of the said daughter. The Supreme Court of Washington, in deciding the question raised, expressed itself as follows:

"As we construe the pleadings, the items of medical attendance and expense for care and nursing were not included in the allegations in the complaint in the federal court action, and were in no form litigated in that action. The question then arises whether the appellant has a right to recover for these items in this action. The law is that, when a minor is injured, two causes of action arise, one in favor of the minor for pain and suffering and permanent injury, the other in favor of the parent for loss of services during minority and expenses of treatment. These actions may be joined or tried separately. *In Harris* v. *Puget Sound Electric Railway*, 52 Wash. 299, 100 Pac. 841, upon this question it was said:

" 'When a minor is injured, two causes of action arise, one in favor of the minor for pain and suffering and permanent injury, the other in favor of the parents for loss of services during minority or expenses of treatment . . .'. These causes may be joined or tried in separate actions . . .'

"Where a minor is injured through the negligence of another, and an action is brought by the parent as guardian ad litem, and in that action recovery is sought by the complaint, or there are litigated therein any items of damage which belong to the parent, a subsequent action cannot be waged by the parent for the same items, because, by including them in the action in which the parent is guardian ad litem, the minor was authorized to recover such item or items of damage, and the parent is estopped from subsequently recovering therefor. (Citations): *In Donald* v. *Ballard*, 34 Wash. 576, 76 Pac. 80, referring to the previous case of *Daly* v. *Everett Pulp & Paper Co.*, 31 Wash. 252, 71 Pac. 1014, it was said:

" 'This court held that, when a suit it brought for damages arising from injuries to a minor, and when the action is brought in behalf of the minor with the father's consent, for damages which would otherwise be recoverable by the father, the latter cannot afterwards be heard to say that he has a demand of his own for the same items of damage which were included in the former suit. It was held that, under such circumstances, the father has emancipated his son in so far as the right to recover damages which were included in the son's suit is concerned. Such is the case here. That the father consented to this recovery by the son is manifest, since he himself caused the action to be brought in his own name as guardian ad litem, and specifically included the item of damage, here under discussion. Under the case cited the minor was authorized to recover this item of damage and the father cannot again, in his own behalf recover for the same damage.'

"Applying the law to the facts in this case, it appears that the appellant, so far as the pleadings show, had a cause of action against the respondent for medical attendance, loss of services during the period of minority, and expenses for care and nursing; that the appellant, as the guardian ad litem for his minor daughter, waged the action in the federal court, and there was included in that action the item of loss for services; that there were not included in that action items of expense for medical attendance and care. Since these items were not litigated in any form in the federal court action, it cannot be said that the appellant authorized a recovery for such items therein, and is therefore estopped from maintaining the present action."

In the instant case, Arturo Gigante includes among the damages caused to his daughter, the expenditures for medicine and medical assistance which are alleged in the first cause of action. We believe with the Supreme Court of Washington that Mr. Gigante can not in the future claim this sum, which, in addition to having been alleged, has been the object of proof. It seems to us that, in view of the pleadings and the evidence, the conclusion that the damages have been waived by the father in favor of the daughter is sound.

As to the award of costs, the appellant says that the complaint contained two causes of action, two distinct claims, for the sum of $1,050, and that the lower court entirely dis-

missed one of those causes of action. We have examined the pleadings and the evidence and all of the circumstances intervening in this case, and we are not convinced that the defendant has been so obstinate as to justify an award of attorney's fees against him. We respect the judgment of the lower court in regard to the costs, but we believe that the attorney's fees should be excluded from the award.

As to the evidence, we cannot say that the court *a quo* has committed manifest error in weighing it. It has been shown that the child was bitten by a dog called Nerón which lived in the appellant's house. The very evidence of the defendant shows this. Tulio J. Mas, who is a nephew of the wife of José Álvarez, and who claims to be the owner of the dog, testified that he lives in the home of Mr. Álvarez, where he has always kept the dog loose in the house, that the dog lives there, that he is always roving, and that the witness takes care of feeding the said animal. José Nogueras, a witness for the defendant, testified that he is the chauffeur of José Álvarez, that the dog was lying on the sidewalk of the defendant's house on the day of the accident, that when he began to work in Mr. Álvarez' house the dog was there, and that during all of the time that he has been in said house the said dog had been loose. The defendant José Álvarez testified that the dog came to his house about three years ago, that he has always seen it loose around there, and that Tulio Mas is the one who takes care of the dog, feeding him, taking him out, and bathing him in the ocean.

The law applicable to this case is section 1805 of the Civil Code of Puerto Rico, 1930 ed., which textually reads as follows:

"The possessor of an animal, or the one who uses the same, is liable for the damages it may cause, even when said animal should escape from him or stray.

"This liability shall cease only in case the damage should arise from *force majeure* or from the fault of the person who may have suffered it."

This section of our code is identical with section 1905 of the Spanish code from which it was copied. The lower court in its decision cites a commentary on this section by Mr. Martínez Ruiz in his work *"Interpretación al Código Civil,"* 1908 ed., reading as follows:

"One who possesses or makes use of an animal for utility or recreation, is obliged to exercise over the same the vigilance and care necessary to avoid damages to a third person. But it is not on this consequences, since he must be aware of the relative inefficiency of the animal of the obligation to repair the damage it may cause, to which section 1905 refers. From the mere fact of possession the law presumes the tacit consent of the possessor to answer for all of its consequences, since he must be aware of the relative inefficiency of vigilance and care of irrational beings. And by virtue of this presumption he is made responsible for all damages caused by the animal *even if it should escape from him or stray away;* that is, even if he should find himself in a position which would prevent him from exercising the vigilance to which he is bound. The want of vigilance is not, therefore, the cause of the obligation which he assumes to repair the damage. As may be seen from a mere reading of this section, the code has disregarded the distinction, which the *Partidas* recognized between wild and tame animals, and therefore the provisions of this section are equally applicable to one or the other." Volume II, p. 149.

With respect to the possession of the animal of which the Civil Code speaks, the lower court expressed itself as follows:

"What our law says is that the possessor of an animal, or the one who uses it for utility or recreation, shall be liable for any damages it may cause. We have found an extensive note on this question in *Holmes* v. *Murray,* 17 L.R.A. (N. S.) 431, where the case of *Schultz* v. *Griffith,* 72 N. W. 745, is cited. The consensus of the decisions is that a person who permits a servant or employee to keep a dog in his residence, harbours or keeps the same. This doctrine is exactly the same as that sustained by our historic law. For further particulars see 1 R.C.L. 1120, par. 63, and 3 C. J. 106, par. 345. The evidence of the plaintiff preponderantly shows that the damage was caused by a dog which was in the possession of the defendant, and taking into consideration the applicable law and jurisprudence, the nature of the injuries suffered, and all of the evidence presented in the case, we hold

that the defendant must pay to the plaintiff the damage caused in a sum which we justly and reasonably fix at $350, for which sum judgment is rendered in favor of the plaintiff on the first cause of action set up in the complaint.''

In the case of *Redinger* v. *Crespo*, 18 P.R.R. 106, several paragraphs are copied from the commentator Manresa, who maintains similar views to those held by Mr. Martínez Ruiz, it is stated that the American authorities express virtually the same opinion, and a paragraph, among others, is copied from Cyc., reading as follows:

''Harboring means protecting, and one who treats a dog as living at his house, and undertakes to control his actions, is the owner or keeper within the meaning of the law; but the casual presence of an animal on his premises, if not so treated, does not constitute him such owner or keeper. If the head of a family, having possession and control of a house or premises, suffer or permit an animal to be kept on the premises in this way he may be regarded as keeper, whether the animal be owned by his child or his wife; and, where a married woman has all the rights of a *feme sole* in respect of her separate property, she may be liable as keeper though the animal be actually owned by her husband, though this is not necessarily so. So, too, a corporation, or the officers thereof, an innkeeper, or a ship may be liable. A person who knowingly permits a dog to be kept on his premises, by a servant or agent, is a keeper within the purview of the statute; but this is not true where the employee occupies a separate residence on the employer's premises. The fact that others than defendant had some part in taking charge of an animal does not prevent his being the keeper within the meaning of the statute.'' (2 Cyc., 378, 379, and cases cited.)

This doctrine was confirmed by this court in the case of *Torres* v. *Dávila*, 47 P.R.R. 298, in which Mr. Justice Wolf, speaking for the court, said:

''Where in an action for damages brought by a person who was bitten by a fierce dog there is evidence believed by the court tending to show that the dog belonged to the defendant and also that even if the dog did not belong to him, the same was frequently, if not constantly, within the house of the defendant who gave it the run of the same and was hence in possession of the defendant, said defendant is

liable for the damages caused by the dog according to section 1805 of the Civil Code of Puerto Rico (1930 ed.)."

With respect to the damages, the evidence shows that the child received a punctured wound, and was visited about six times by Dr. Pujadas who gave her an antitetanus injection. The cure, according to this physician, was rapid. The child testifies that the bite produced a very strong pain, that at night she dreamed of the dog and woke up crying and calling her mother.

The lower court fixed the damages at $350. The defendant did not attack this sum as excessive, but because, in his opinion, it is Arturo Gigante who brings the action, and the latter has no right, according to the evidence, to a sum larger than $50 for medical assistance. This assignment of error must be overruled.

As to the fault attributed to the child Georgina, we abide by the conclusions of the lower court, although we disagree somewhat with its reasoning.

The judgment appealed from must be affirmed, after it is modified in the sense of adjudging the defendant José Alvarez to pay to the child Georgina Gigante, represented by her father Arturo Gigante, the sum of $350 with costs, excluding attorney's fees.